**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILMER CATALAN-RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. Case No. 17-cv-3258 |
| | ) | |
| , | ) | |
| | ) | The Hon. Joan H. Lefkow |
| | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| | ) | |
| RICARDO WONG, Field Office Director, | ) | |
| Chicago, U.S. Immigration and Customs | ) | |
| Enforcement ("ICE"), ICE AGENT JOHN | ) | |
| DOES 1-6, MCHENRY COUNTY, | ) | |
| MCHENRY COUNTY SHERIFF BILL PRIM, | ) | |
| CHIEF OF CORRECTIONS DAVID | ) | |
| DEVANE, CORRECT CARE SOLUTIONS, | ) | |
| HEALTH ADMINISTRATOR MIKE | ) | |
| KEEGAN, SUPERINTENDENT EDDIE | ) | |
| JOHNSON, COMMANDER CHRISTOPHER | ) | |
| KENNEDY, COMMANDER ALFRED | ) | |
| NAGODE, CHICAGO POLICE OFFICER | ) | |
| JOHN DOES 1-2, and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF A PRELIMINARY
INJUNCTION**

Mr. Wilmer David Catalan-Ramirez, an immigrant awaiting his deportation proceedings,

is partially paralyzed on his left side and lives with a traumatic brain injury. Since March 27,

2017, Mr. Catalan-Ramirez has been detained at the McHenry County Adult Correctional Facility

(MCACF) where his acute medical and rehabilitative needs have gone unmet. This denial of care places Mr. Catalan-Ramirez at risk of significant permanent injury.

For this reason, and pursuant to Federal Rule of Civil Procedure 65, Mr. Catalan-Ramirez seeks a preliminary injunction ordering the Defendants to provide him with medical and rehabilitative services and to provide him with the accommodations he needs to perform the activities of daily living. Specifically, Mr. Catalan Ramirez seeks an order against Defendants McHenry County Sheriff Bill Prim and Chief of Corrections David Devane requiring that they:

1) Provide Mr. Catalan-Ramirez with the shoes that are in his personal property and allow him to wear these shoes so that he is able to have appropriate support when he attempts to walk on his partially paralyzed left leg. In the event that Mr. Catalan-Ramirez's shoes are unavailable, provide him with shoes that are commonly known as "gym" or "tennis" shoes;

2) Provide Mr. Catalan-Ramirez with a leg brace that is fully functional and that does not have any broken straps or other non-functional components;

3) Ensure that correctional officers cut up Mr. Catalan-Ramirez's food and open any containers containing food or drink and/or provide other assistance to ensure that Mr. Catalan-Ramirez is able to feed himself using only his right hand;

4) Ensure that upon request, correctional officers provide Mr. Catalan-Ramirez with assistance getting dressed and undressed, using medically required devices such as a sling for his left arm and brace for his left leg, and/or showering;

5) Ensure that in the event that Mr. Catalan-Ramirez requests other detainees' assistance with getting dressed and undressed, using medically required devices and/or cutting and opening food or drink and that detainee(s) are willing to help Mr. Catalan-Ramirez, neither Mr. Catalan-Ramirez nor the detainee(s) offering assistance will be punished, threatened with

punishment or subject to any adverse action as a result of asking for assistance or granting assistance;

6)      Prohibit all correctional staff from taunting, harassing or using any sort of slurs in reference to Mr. Catalan-Ramirez and prohibit any kind of retaliation against Mr. Catalan-Ramirez related to his efforts to secure accommodations for his disabilities.

Mr. Catalan-Ramirez seeks an order against Defendant Mike Keegan Health Services Administrator and an employee of Correct Care Solutions, LLC, the medical care provider at MCACF, requiring that he:

1)      Ensure that Mr. Catalan-Ramirez is provided with rehabilitative services to include physical and occupational therapy for at least one hour three times a week beginning no later than May 5, 2017;

2)      Ensure that Mr. Catalan-Ramirez receives a comprehensive medical evaluation no later than May 5, 2017;

3)       Immediately ensure that Mr. Catalan-Ramirez is provided with his previously prescribed medications: Naprosyn, Tramadol and Baciofen. Ensure that an orthopedic doctor evaluates Mr. Catalan-Ramirez's left shoulder and that any required care and or treatment is provided by no later than May 5, 2017;

4)      Prohibit all Correct Care staff and/or contractors from taunting, harassing or using any sort of slurs in reference to Mr. Catalan-Ramirez and prohibit any kind of retaliation against Mr. Catalan-Ramirez related to his efforts to secure adequate medical care.

And finally, Mr. Catalan-Ramirez seeks an order against Defendant Ricardo Wong, the Field Office Director, Chicago, U.S. Immigration and Customs Enforcement, requiring him to

3

work with the other Defendants to implement the terms of the order and to protect Mr. Catalan-Ramirez against relation in response to his efforts to secure adequate care for himself.

Preliminary injunctions are granted in extraordinary situations where there is a clear showing of need. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cooper v. Salazar*, 196 F.3d 809 (7th Cir. 1999). The need here could not be more obvious or more immediate. Mr. Catalan-Ramirez's situation satisfies each requirement for a Preliminary Injunction: (1) he will succeed on the merits because the Defendants here have so clearly been deliberately indifferent to his serious medical needs and to his need for accommodations in the activities of daily; (2) in the absence of intervention by this Court, Mr. Catalan-Ramirez will suffer irreparable harm—namely substantial likelihood that he will remain partially paralyzed and not regain his full functionality and that he will experience extreme pain and discomfort as he struggles to dress, feed and bathe himself; (3) there is no adequate remedy at law—only an injunction will ensure that the various Defendants provide appropriate care and accommodations for Mr. Catalan-Ramirez; and (4) ensuring that the Defendants provide to Mr. Catalan-Ramirez the care to which he is entitled under the Constitution and federal statute will further the public interest and will not harm the Defendants in any way. *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803 (7th Cir. 2002). Thus, this Court must act in order to ensure that Mr. Ramirez is provided the care and the accommodations to which he is entitled.[1]

---

[1] Prior to filing this motion, undersigned counsel attempted to negotiate a resolution of these claims with counsel for the Defendants. Those efforts were unsuccessful, thus necessitating the request for emergency relief. *See* Exhibit 1.

I.      **Mr. Catalan-Ramirez will prevail on his claim that the Defendants are deliberately indifferent to his serious medical needs.**

In order to demonstrate a substantial likelihood of success on the merits, a plaintiff must demonstrate "a plausible claim on the merits." *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). Courts should not "improperly equat[e] 'likelihood of success' with 'success'...." *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011) (citing *University of Texas v. Camenisch,* 451 U.S. 390, 394 (1981)). "[T]he threshold for establishing likelihood of success is low." *Id*. A plaintiff need "only to present a claim plausible enough that (if the other preliminary injunction factors cut in their favor) the entry of a preliminary injunction would be an appropriate step." *Id.* at 783. To determine whether a plaintiff's legal arguments have a likelihood of succeeding, courts use whatever existing test would be employed to decide the merits of the case. *South Ass'n of Realtors v. Evergreen Park*, 109 F.Supp.2d 926, 927 (N.D. Ill. 2000).

Mr. Catalan-Ramirez is a civil detainee who is not "punishable" under the Eighth Amendment. His constitutional legal claims are evaluated in the same manner of those of a pretrial detainee; therefore, Mr. Catalan-Ramirez's claims will be considered under the due process clause instead of the Eighth Amendment. *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979)).

Mr. Catalan-Ramirez must therefore couch his access to medical care claims as violations of his Fourteenth Amendment rights to due process, not the Eighth Amendment's ban on cruel and unusual punishment. *See Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir. 2002); *Pardue ex rel. Estate of Cole v. Fromm,* 94 F.3d 254, 259 n.1 (7th Cir. 1996). The protection of pre-trial detainees' rights under the due process clause of the Fourteenth Amendment is "at least as great

as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983).

The Defendants have an affirmative obligation to ensure that the people in their custody are provided with adequate medical care and related services. "[T]he Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016). To evaluate whether a Plaintiff will prevail on a medical care claim in a correctional context, the Court applies a two-part test: 1) examining whether there exists an objectively serious medical need and 2) determining whether the defendants have been deliberately indifferent to that condition. *Id.*

1. **Mr. Catalan-Ramirez's traumatic brain injury and his related medical complications constitute objectively serious medical needs.**

An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Under Seventh Circuit law, the indicators of a serious medical need are: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain." *Id.*

It is undisputed that Mr. Catalan-Ramirez lives with a traumatic brain injury, that he is partially paralyzed as a result of that injury and that he has a fractured shoulder. These ailments have long been recognized by the courts as easily meeting the criteria for a "serious medical

need." Dr. Mindy Schwartz, a medical doctor who has examined Mr. Catalan-Ramirez's records

and submitted a declaration attached to this motion notes that:

> Without appropriate rehabilitative services, Mr. Catalan Ramirez runs the risk of developing contractures in his weak extremities, meaning he could lose any ability to use his left arm and leg. This result could permanently damage his ability to live independently, to work and to care for himself. Exhibit 2, Schwartz Dec at 6.

In relation to Mr. Catalan Ramirez's medical needs related to his fractured shoulder, Dr.

Schwartz states that: "It is critically important that Mr. Catalan-Ramirez be evaluated to

determine what course of action is required to care for his shoulder. The delay of over one month

to receive care for his shoulder likely has already compromised healing and stability in a patient

with an already compromised extremity." Schwartz Dec. at 8.

Mr. Catalan-Ramirez will thus clearly meet the requirements for establishing that he has a

serious medical need. *Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 965 (N.D. Ill. 2010)

(describing a traumatic brain injury as "extremely serious"); *Weeks v. Chaboudy*, 984 F.2d 185,

187 (6th Cir. 1993) (finding a physician was deliberating indifference to the serious medical

needs of a detainee with paralysis when he denied that detainee access to a wheelchair); *Haley v.

Feinerman*, 168 F. App'x 113, 116 (7th Cir. 2006) (in case concerning medical care provided to

inmate with a broken arm "the parties do not dispute that [a broken arm is] a serious medical

condition.").

### 2. The Defendants have exhibited deliberate indifference to Mr. Catalan-Ramirez's serious medical needs.

Once the plaintiff has established that he has a serious medical need, he must demonstrate

that the defendants are deliberately indifferent to that need.[2] Here, the Defendants have

---

[2] In *Youngberg v. Romero*, the Supreme Court stated that civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of

demonstrated deliberate indifference by subjecting Mr. Catalan-Ramirez to significant delays in

securing needed medical care that have caused him significant pain, could result in him living

with permanent injury and could leave him permanently paralyzed for life. *See* Schwartz Dec. at 4

("Unless services resume immediately Mr. Catalan-Ramirez, will most certainly suffer permanent

damage that could prevent him from regaining full functionality.").

      Courts have long held that a delay in treatment can constitute deliberate difference when

the delay exacerbates the injury or unnecessarily prolonged an inmate's pain. *Petties v.*

---

confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). This argument applies with special force to immigration detainees. As the Ninth Circuit has stated, "incarceration may be a cruel necessity of our immigration policy; but if it must be done, the greatest care must be observed in not treating the innocent like a dangerous criminal." *Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1104 (9th Cir. 2004).

      The deliberate indifference standard, which is applied to post-conviction prisoners' medical care claims, is therefore not appropriate for civil detainees. While the precise standard for the medical care of civil immigration detainees is not settled in the Seventh Circuit, the Supreme Court has indicated recently that subjective state of mind tests (such as the deliberate indifference test) are only appropriate for post-conviction prisoners, and not even for pretrial detainees. *Kingsley v. Hendrickson*, 135 S. Ct. 2466 2473-74 (2015) ("[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.").

      In the wake of *Kingsley v. Hendrickson*, other circuits have held that claims brought by even pretrial detainees detained pursuant to criminal process—to say nothing of immigration detainees detained pursuant to civil process—must have their failure to protect and medical care claims judged by objective standards, not state of mind tests. *See Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) (applying objective standard to claim that jailers failed to protect detainee from beating by cellmate); *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).

      In light of the fact that immigration detainees are incarcerated solely pursuant to civil process, and are neither being punished for a crime nor held on suspicion of a crime, the proper standard, at minimum, should be the one recently applied by the Ninth and Second Circuits to pretrial detainees in *Castro* and *Darnell*. A defendant is liable if she "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

*Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc) (inexplicable delay in treatment that serves no penological interest and prolongs pain supports inference of deliberate indifference); *Green v. Beth*, 663 F. App'x 471, 474 (7th Cir. 2016) (reversing district court and finding that making an inmate wait six days to treat a broken tooth that was causing him serious pain stated a claim for deliberate indifference). Mr. Catalan Ramirez has languished in detention for over one month and without access to rehabilitative services needed to treat his traumatic brain injury and resulting paralysis, without receiving care for his fractured shoulder and with sporadic access to his medications. *See* Exhibit 4, Catalan-Ramirez Dec. These delays have inflicted upon Mr. Catalan-Ramirez significant pain and could result in permanent paralysis. Thus, Mr. Catalan-Ramirez has clearly demonstrated that the Defendants have demonstrated deliberate indifference to his serious medical needs. *Smith v. Knox Cnty. Jail,* 666 F.3d 1037, 1040 (7th Cir. 2012). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Spencer v. Sheehan,* 158 F.Supp.2d 837 (N.D. Ill. 2001) (one week delay in the plaintiff's treatment for a foot injury that was a result of referring doctor's inaction and failure to ensure the plaintiff received prompt attention for a specialist could demonstrate deliberate indifference).

## II.    Mr. Catalan Ramirez will prevail on his claim that he is entitled to reasonable accommodations under the Americans with Disabilities Act.

To state a claim for the refusal to provide a reasonable accommodation under Title II of the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *See* 42 U.S.C. § 12132. Mr. Catalan-Ramirez easily meets each one of these criteria.

9

A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 1202.

Because of his traumatic brain injury, Mr. Catalan-Ramirez cannot dress himself, cut or open his food or walk around the detention center without his leg brace. He is thus a qualified individual with a disability. (*See* Ex. 2, Ray Lee letter and Schwartz Dec at 7.)

The McHenry County Adult Correctional Facility does not appear to offer its detainees many programs, but it does offer meals, recreational opportunities and the opportunity for detainees to sit in the dayroom and watch TV. *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 672 (7th Cir. 2012) ("Although incarceration is not a program or activity, the meals and showers made available to inmates are."). Unless Mr. Catalan-Ramirez is provided with reasonable accommodations, such as assistance with dressing, with cutting and opening his food and with a functional, non-broken leg brace, he will be prohibited from engaging in the detention center's programs and activities. Mr. Catalan-Ramirez will clearly prevail on his Americans with Disabilities Act Claim.

### III. Mr. Catalan-Ramirez will suffer irreparable harm in the absence of a preliminary injunction.

A preliminary injunction is necessary to avert the ongoing violation of Mr. Catalan-Ramirez's constitutional rights, which constitutes irreparable harm. "The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy

certainly would serve the public interest." *Preston v. Thompson,* 589 F.2d 300, 303 n.3 (7th Cir. 1978) (affirming grant of preliminary injunction in prison conditions case).

Indeed, the pain Mr. Catalan-Ramirez experiences because of the Defendants' lack of care and accommodation for his conditions and the risk to his future well-being indisputably constitute irreparable harm that warrants preliminary injunctive relief. *See Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009) (granting a preliminary injunction in a prison medical care case where the irreparable harm constituted continued medication errors and delays, which will result in life-threatening risks, the exacerbation of chronic and acute serious medical conditions, and unnecessary pain and suffering). Courts have found that in the detention context, the likely risk of future harm is sufficient to constitute irreparable harm. Where "[t]he plaintiff's evidence allows an inference that the defendants 'have, with deliberate indifference, exposed him to ... an unreasonable risk of serious damage to his future health'" courts will find that irreparable harm exists. *Farnam v. Walker*, 593 F. Supp. 2d 1000, 1012-13 (C.D. Ill. 2009).

Thus, in numerous cases, courts have granted preliminary injunctive relief to ensure detainees and people living in jails and prison receive adequate medical and mental health care. *See, e.g.*, *Foster v. Ghosh*, 4 F. Supp. 3d 974, 977 (N.D. Ill. 2013) (granting Plaintiff's preliminary injunction requesting that prison doctors grant him access to an ophthalmologist to evaluate his cataracts and subsequently provide him with adequate treatment); *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 956 (N.D. Cal. 2015) (granting preliminary injunctive relief requiring jail to provide proper TB identification, isolation, diagnosis and treatment, to eliminate potential suicide hazards for unstable patients, to continue community medications, properly treat inmate's withdrawing from drugs and alcohol, and to rectify ADA violations for individuals who need sign language interpreters); *Flynn v. Doyle*, 630 F. Supp. 2d 987 (E.D. Wis. 2009) (granting

11

preliminary injunction requiring all controlled medications at the prison be distributed by trained medical personnel with credentials equal to or greater than Licensed Practical Nurses); *Yarbaugh v. Roach*, 736 F. Supp. 318 (D.D.C. 1990) (granting preliminary injunction to have prison provide inmate with adequate medical treatment for his multiple sclerosis); *Duran v. Anaya*, 642 F. Supp. 510 (D.N.M. 1986) (inmates were entitled to a preliminary injunction prohibiting implementation of proposed staff reductions with respect to medical care, mental health care, and security).

### IV. Mr. Catalan-Ramirez lacks an adequate remedy at law for ongoing violations of constitutional rights and risks to safety.

Money will not make Mr. Catalan-Ramirez whole, treat his medical needs or accommodate his disabilities. Only an order from this Court will accomplish this. *Flower Cab Co. v. Petite*, 685 F.2d 192, 195 (7th Cir. 1982) (stating that in prison conditions cases, "the quantification of injury is difficult and damages are therefore not an adequate remedy"); *Foster v. Ghosh*, __F. Supp. 2d __, 2013 WL 6224572, at *5 (N.D. Ill. Nov. 26, 2013) (granting preliminary injunction to prisoner requiring medical attention; no adequate remedy at law exists because "the consequence of inaction at this stage would be further deteriorated vision in both eyes"); *Pocklington v. O'Leary*, No. 86 C 2676, 1986 WL 5748, at *1 (N.D. Ill. May 6, 1986) (Shadur, J.) (where prisoner faces a risk of rape, "[d]amages are plainly not an adequate remedy for the kind of further indignity with which [he] is threatened").

### V. Mr. Catalan-Ramirez will suffer greater harm if a preliminary injunction is denied than defendants will suffer if the preliminary injunction is granted.

The balancing of harms depends on the scope and nature of a particular injunction. The injunction sought here merely requires that the Defendants adhere to their constitutional obligations and statutory obligations. Such an injunction will end Mr. Catalan-Ramirez's physical suffering and preserve his ability to function in the long term. The Defendants have no legitimate

interest in continuing their unlawful treatment of Mr. Catalan-Ramirez. *Laube v. Haley*, 234 F.Supp.2d 1227, 1252 (M.D. Ala. 2002) ("[T]here is a strong public interest in requiring that the plaintiffs' constitutional rights no longer be violated…."); *Vazquez v. Carver*, 729 F. Supp. 1063, 1070 (E.D. Pa. 1989).

Furthermore, administrative costs associated with the implementation of a preliminary injunction are not the sort of harm to Defendants that can justify the ongoing violation of a constitutional right. *See, e.g.*, *Mitchell v. Cuomo*, 748 F.2d 804, 806, 808 (2d Cir. 1984) ("Faced with such a conflict between the state's financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to plaintiffs on the other, we have little difficulty concluding that the district judge did not err in finding that the balance of hardships tips decidedly in plaintiffs' favor."); *Moore v. Morgan*, 922 F.2d 1553, 1557 n.4 (11th Cir. 1991).

**VI.     The Court should waive bond.**

Under Federal Rule of Civil Procedure 65(c), district courts have discretion to determine the amount of the bond accompanying a preliminary injunction, and this includes the authority to set a nominal bond. In this case, the Court should waive bond because the Plaintiff is indigent, the requested preliminary injunction is in the public interest, and the injunction is necessary to vindicate constitutional rights. *See Pocklington v. O'Leary*, No. 86 C 2676, 1986 WL 5748, at *2 (N.D. Ill. May 6, 1986) ("[B]ecause of [a prisoner's] indigent status, no bond under Rule 65(c) is required."); *Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002) ("minimal bond amount should be considered" in public interest case); *Complete Angler, LLC v. City of Clearwater*, 607 F.Supp.2d 1326, 1335 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.").

**Conclusion**

13

For the foregoing reasons, the Court should order an evidentiary hearing on the motion for a preliminary injunction at the earliest possible date and/or enter the proposed order and ensure that Mr. Catalan-Ramirez receives the medical care, rehabilitative services and accommodations to which he is entitled under state and federal law.

Respectfully submitted,

**WILMER CATALAN-RAMIREZ**

By: /s/ Sheila A. Bedi
One of his attorneys

Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
sheila.bedi@law.northwestern.edu
vanessa.delvalle@law.northwestern.edu


"Julie" Yihong Mao
Sejal Zota
National Immigration Project of the National Lawyers Guild
14 Beacon Street, Suite 602
Boston, MA 02108
julie@nipnlg.org
sejal@nipnlg.org
(617) 227 - 9727
*applications for *pro hac vice* admission forthcoming

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she filed the foregoing document via the Court's CM/ECF system, which will automatically provide notice to all parties, on this the 1st day of May, 2017.

/s/   Sheila A. Bedi

14