14153-35
JLB

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILMER CATALAN-RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-03258 |
| | ) | |
| RICARDO WONG, Field Office Director, | ) | |
| Chicago, U.S. Immigration and Customs | ) | |
| Enforcement ("ICE"); ICE AGENT JOHN | ) | |
| DOES 1-6; MCHENRY COUNTY, | ) | |
| MCHENRY COUNTY SHERIFF BILL PRIM, | ) | |
| CHIEF OF CORRECTIONS DAVID | ) | |
| DEVANE, CORRECT CARE SOLUTIONS, | ) | |
| HEALTH ADMINISTRATOR MIKE | ) | |
| KEEGAN, SUPERINTENDENT EDDIE | ) | |
| JOHNSON, COMMANDER CHRISTOPHER | ) | |
| KENNEDY, COMMANDER ALFRED | ) | |
| NAGODE, CHICAGO POLICE OFFICER | ) | |
| JOHN DOES 1-2, and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO SEVER AND TRANSFER MISJOINED CLAIMS/PARTIES TO WESTERN DIVISION AND/OR MOTION TO DISMISS CLAIMS AGAINST CORRECT CARE SOLUTIONS, LLC, AND MICHAEL KEEGAN, R.N.**

NOW COME Defendants, CORRECT CARE SOLUTIONS, LLC, and MICHAEL KEEGAN, R.N., by their attorneys HEYL, ROYSTER, VOELKER & ALLEN, and for their Motion to Sever and Transfer Misjoined Claims/Parties to Western Division and/or Motion to Dismiss Claims Against Correct Care Solutions, LLC, and Michael Keegan, R.N., filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 21, and 28 U.S.C Section 1404, state:

1

14153-35
JLB

*Introduction*

1.     Plaintiff Wilmer Catalan-Ramirez alleges that U.S. Immigration and Customs Enforcement ("ICE") conducted an illegal raid into his house on March 27, 2017, based upon false information provided by the Chicago Police Department that he is a gang member, and that ICE agents used excessive force during the raid and broke his shoulder. Plaintiff accentuates these claims with politically-charged allegations concerning whether the City of Chicago is truly a sanctuary city with respect to undocumented immigrants like him who have been incorrectly labeled a gang member in a database that the Chicago Police Department maintains. As against the ICE and Chicago defendants, Plaintiff asserts Count I alleging unlawful entry and unreasonable seizure, Count II alleging excessive force, Count VI alleging denial of due process concerning the gang database, Count VII alleging a Section 1983 *Monell* claim concerning the gang database, Count VIII alleging an Illinois Civil Rights Act claim against Chicago concerning discrimination against black and Latino men and Count IX alleging indemnification against Chicago. *See* Court Doc. No. 1, attached hereto as Exhibit A. These claims should be in one lawsuit pending in the Eastern Division of the United States District Court for the Northern District of Illinois.

2.     Plaintiff adds unrelated Section 1983 *Monell* medical deliberate indifference (Count III), Americans With Disabilities Act (Count IV) and Section 1983 retaliation (Count V) claims against the McHenry County defendants, Correct Care Solutions ("CCS") (the medical vendor at the McHenry County Adult Detention Facility ("the jail")) and jail Health Services Administrator Michael Keegan, R.N., stemming from his claim that he is not receiving proper

2

14153-35
JLB

care for gunshot wounds he sustained in January of 2017 and for his shoulder injury at the jail located in Woodstock, Illinois, which is located in the Western Division of the United States District Court for the Northern District of Illinois. Plaintiff requests injunctive relief against these Defendants which, if granted, would occur in the Western Division. There are no allegations that the McHenry County/CCS defendants had anything to do with the allegations asserted against the ICE and Chicago defendants or vice versa; there are no allegations that the McHenry County/CCS defendants did anything in the Eastern Division. *See* Court Doc. No. 1 (Exhibit A). The McHenry County/CCS claims, which CCS and Nurse Keegan dispute, should be in a separate lawsuit pending in the Western Division of the United States District Court for the Northern District of Illinois.

### *Sever Misjoined Claims/Parties*

3. This Court should sever the medical/disability claims asserted against CCS, Nurse Keegan and the McHenry County defendants in Counts III, IV and V from the law enforcement/discrimination claims asserted against the ICE and Chicago defendants in Counts I, II, VII-IX, and then transfer Counts III, IV and V to the Western Division because the claims and parties are unrelated, and the medical treatment at issue is taking place in the Western Division.

4. In *George v. Smith*, the Seventh Circuit held that "[u]nrelated claims against different defendants belong in different suits." 507 F.3d 605, 607 (7th Cir. 2007).

5. Federal Rule of Civil Procedure 21 authorizes a Court to sever any misjoined party or claim at any stage of the lawsuit. Although Rule 21 does not set forth a standard for proper joinder, courts have applied the permissive joinder requirements of Rule 20(a).

14153-35
JLB

6. Under Rule 20(a), parties are properly joined where they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences" and raise common questions of law and fact. Courts interpret "transaction or occurrence" as comprehending a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Courts determine the logical relatedness of separate occurrences by considering a variety of factors, including whether the alleged conduct occurred during the same general time period and involved the same people and similar conduct. *See, e.g., Lozada v. City of Chicago*, 2010 U.S. Dist. LEXIS 89231 (N.D. Ill. Aug. 30, 2010) (Exhibit B) (severing plaintiffs' false arrest and malicious prosecution claims in a *Monell* case because each arrest was a distinct occurrence on a specific date, at a particular location and under unique circumstances despite the common pattern, policy and practice allegations); *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000) (severing plaintiffs' claims as they arose out of different transactions and occurrences, and the potential inconvenience and expense of separate trials did not outweigh the extreme prejudice to the defendant); *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 139068 (N.D. Ill. Sept. 27, 2013) (Exhibit B) (severance was appropriate in internet copyright infringement cases because the copyright owner failed to offer any allegations from which the court could have found that defendants participated in the same swarm at roughly the same time in order to illegally download and exchange file blocks with one another); *Ramos v. Playtex Prods.*, 2008 U.S. Dist. LEXIS 75957 (N.D. Ill. Aug. 27, 2008) (Exhibit B) (claims against manufacturers for unfair and deceptive acts and practices, breach of implied warranty, negligence, and unjust enrichment were severed as the claims did not arise from a

14153-35
JLB

common transaction, occurrence, or series of transactions or occurrences; there was no indication that the defendants acted jointly).

7.  Here, the claims against the McHenry County and CCS defendants are misjoined as they do not arise out of the same transaction, occurrence, or series of transactions or occurrences. The claims against the McHenry County and CCS defendants will involve discovery into and evidence concerning Plaintiff's alleged disability and medical treatment at the jail in Woodstock, Illinois, where Plaintiff is seeking injunctive relief. In contrast, the claims against the ICE and Chicago defendants will involve discovery into and evidence concerning whether the ICE agents had a proper basis for raiding Plaintiff's home, whether the agents used excessive force in detaining him, whether Chicago is a sanctuary city for immigrants and whether Chicago's gang data base violates Plaintiff's rights. There is no factual or legal nexus between the claims.

8.  The claims Plaintiff asserts against the ICE and Chicago defendants are hot topics in the news and extremely controversial in this political climate. The McHenry County and CCS defendants had nothing to do with those inflammatory allegations and would be severely prejudiced if the unrelated claims are tried together. Also, the McHenry County and CCS defendants would be forced to participate in extensive discovery that does not at all concern Plaintiff's medical treatment at the jail. Consequently, the counts should be severed pursuant to Rule 21.

***Transfer to Western Division***

9.  Furthermore, Counts III, IV and V should be transferred to the Western Division pursuant to Section 1404 because everything that is alleged in those counts happened there

5

14153-35
JLB

and nothing that is alleged in those counts happened in the Eastern Division. Further, Plaintiff is seeking injunctive relief which, if granted, would take place in the Western Division.

10. When venue is proper but inconvenient, the defense may move to transfer a case to a more convenient forum pursuant to 28 U.S.C. §1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Though Section 1404(a) is derived from the common law doctrine of *forum non conveniens*, the moving party under Section 1404(a) has a lesser burden of showing inconvenience than is required under the common law doctrine, and the Court has greater discretion to order a venue change. *Rockwell Int'l Corp. v. Eltra Corp.*, 538 F.Supp. 700, 702 (N.D. Ill. 1982); *see also Westchester Fire Ins. Co. v. Carolina Cas. Ins. Co.*, 2004 U.S. Dist. LEXIS 525, 2004 WL 170325 (N.D. Ill. Jan. 13, 2004) (Exhibit B) (granting transfer to the Western Division where "the connection to the Eastern [Division] is tenuous, many of the events leading to this litigation occurred in the Western Division, and this case has not progressed to the point where a transfer would significantly delay the proceedings").

11. In determining whether transfer is proper for the convenience of the parties and witnesses, a federal court will consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the availability of evidence in each forum; (4) the convenience to the witnesses of litigating in each forum; and, (5) the convenience to the parties of litigating in each forum. *See Avco Corp. v. Progressive Steel Treating, Inc.*, 2005 U.S. Dist. LEXIS 22964, 2005 WL 2483379 (N.D. Ill. Oct. 6, 2005) (Exhibit B) (transferring the lawsuit to the Western Division).

14153-35
JLB

12. Other than the plaintiff's choice of forum, each of these factors weighs heavily in transferring venue insofar as, with respect to Counts III, IV and V, all of the defendants, witnesses to Plaintiff's treatment at the jail and evidence concerning Plaintiff's treatment at the jail are located in the Western Division. Moreover, the specialists that Plaintiff has been referred to are located in the Western Division. The injunctive relief that Plaintiff requests would also occur in the Western Division. In a case in which every single material event in a lawsuit takes place in another forum, this weighs "heavily" in favor of a venue transfer. *Doage v. Bd. Of Regents*, 950 F.Supp. 258, 261 (N.D. Ill. 1997). *See also Sassy, Inc. v. Berry*, 406 F.Supp.2d 874, 876 (N.D. Ill. 2005) (transfer of venue warranted where the plaintiff's chosen forum was not the situs of events).

13. Further, the Eastern and Western Divisions are not equally convenient. The Western Division is more convenient for the McHenry County and CCS defendants. The number of miles alone cannot fully describe the difference in the commute given the nature of the drive into Chicago, where an extra thirty to forty miles could easily take an extra hour and a half. *See Thomas v. City of Woodstock*, 2011 U.S. Dist. LEXIS 98371, 2011 WL 3841811 (N.D. Ill. Aug. 30, 2011) (Exhibit B) (noting "Woodstock is closer to the Western Division's Rockford courthouse (43 miles) than to the Eastern Division's Chicago courthouse (63 miles), and Chicago's heavier traffic and congestion make travel from Woodstock to Chicago decidedly more unpredictable, inconvenient, and time-consuming than travel from Woodstock to Rockford.")

14. Additionally, as Northern District judges have recognized: "In resolving a motion to transfer, the convenience of the witnesses is one of the most important factors to be considered." *Moore v. AT&T Latin America Corp.*, 177 F. Supp.2d 785, 790 (N.D. Ill. 2001)

14153-35
JLB

(transferring venue where a majority of witnesses resided in the transferee forum), *quoting Dunn v. Soo Line R.R. Co.*, 864 F.Supp. 64, 65 (N.D. Ill. 1994). Here, potential witnesses include nurses and officers at the jail and the specialists that Plaintiff has been referred to –all of which are located in the Western Division. It would be a substantial professional and personal inconvenience and financial hardship for the witnesses to attend court proceedings and other required legally-related activities if the medical claims remain pending in the Eastern Division.

15. It bears noting that the location or convenience of counsel is not a factor to be considered in reviewing a motion to transfer venue. *See SEC v. Kasirer*, 2005 U.S. Dist. LEXIS 6494, 2005 WL 645246 (N.D. Ill. Mar. 21, 2005) ("[t]he location of counsel. . . is not a relevant factor under § 1404(a); otherwise, a plaintiff could manipulate the selection of a forum by its choice of an attorney."); *see also In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("The word 'counsel' does not appear anywhere in § 1404 (a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").

16. The third factor, the interest of justice, "embraces traditional notions of judicial economy." *Sassy*, 406 F.Supp.2d at 876. Weighed in favor of transfer is the desirability of courts resolving controversies in their locale. *Avco Corp. v. Progressive Steel Treating, Inc.*, 2005 U.S. Dist. LEXIS 22964, 2005 WL 2483379 (N.D. Ill. Oct. 6, 2005) (Exhibit B) ("Compared to the Eastern Division, where none of the parties has any connection material to this case, the Western Division has an interest in having this case resolved there. Thus, transferring this case to the Western Division will promote the interest of justice.").

17. Here, Plaintiff alleges that his right to adequate medical care were and continue to be violated in the Western Division. Such is where Plaintiff is seeking injunctive relief. The

14153-35
JLB

Western Division has a greater interest in entering orders concerning and enforcing injunctive relief in jails located within its borders. Therefore, the interest of justice is served by transferring Counts III, IV and V to the Western Division.

18. Counsel for the movants conferred with counsel seeking an agreement to this motion. Plaintiff's counsel opposes the relief being sought. Counsel for the CCS defendants has not heard back from any other counsel of record as of the time of the filing of this motion.

### *Plaintiff Failed to Satisfy the Monell Pleading Requirements for his Claim Against CCS and Nurse Keegan*

19. Plaintiff sues CCS and Nurse Keegan, solely in his official capacity as Health Services Administrator, pursuant to Section 1983 for alleged medical deliberate indifference (Count III) and retaliation (V). Counts III and V should be dismissed pursuant to Rule 12(b)(6) as against CCS and Nurse Keegan because no facts are alleged to satisfy the requirements for pleading a *Monell* claim.

20. To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9

14153-35
JLB

21. Under 42 U.S.C. § 1983, a person may sue anyone who, while acting under color of law, causes him to be deprived of any of his constitutional rights. 42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 60-62 (2011). An entity and a person sued in their official capacity can be held liable under Section 1983 only when its official policy causes the constitutional deprivation, i.e., through an express policy, a widespread practice or a decision by a policymaker. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). To state a *Monell* claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the entity maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The plaintiff must also show that the entity's policy was the "moving force" behind the alleged injury. *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012).

22. Here, Plaintiff alleges that he personally has not received adequate healthcare at the jail and that he personally was intimidated and accused of misrepresenting his medical needs. Plaintiff fails to allege any facts concerning treatment of other detainees. Plaintiff fails to allege any facts concerning a widespread unconstitutional policy or practice at the jail, much less one that was the "moving force" behind his treatment at the jail. Neither CCS nor Nurse Keegan can be held vicariously liability for the conduct of jail officials or medical staff under Section 1983.

23. Furthermore, while Plaintiff purports to sue CCS and Nurse Keegan as state actors pursuant to Section 1983, no state action is alleged. Plaintiff's Section 1983 claim is actually, in substance, a *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), claim because Plaintiff alleges that CCS and Nurse Keegan were providing

14153-35
JLB

medical care to him for the federal government for purposes of Plaintiff's ICE detention. If the Court agrees that they were federal actors with respect to their interactions with Plaintiff, the claims against CCS and Nurse Keegan should be dismissed pursuant to the Supreme Court's decision in *Minneci v. Pollard*, 132 S.Ct. 617, 181 L. Ed. 2d 606 (2012). In *Minneci*, the Supreme Court declined to extend *Bivens* to find an implied cause of action against employees of a private company that operated a federal prison facility. The Court refused to recognize the new *Bivens* claim "primarily because [the plaintiff/respondent]'s Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law. And in the case of a privately employed defendant, state tort law provides alternative, existing process capable of protecting the constitutional interests at stake." *Id*. at 623 (internal quotations omitted). Here too, tort law in the form of a medical negligence action provides an alternative, existing process capable of protecting Plaintiff's rights. Consequently, Counts III and V should be dismissed as against CCS and Nurse Keegan.

WHEREFORE, Defendants, CORRECT CARE SOLUTIONS, LLC, and MICHAEL KEEGAN, R.N., pray for an Order severing Counts III to V of Plaintiff's Complaint, transferring Counts III to V to the Northern District of Illinois, Western Division, dismisses Count III and V as against CORRECT CARE SOLUTIONS, LLC, and MICHAEL KEEGAN, R.N., and grant such other relief as this Court deems just and proper.

**DEFENDANTS DEMAND A TRIAL BY A JURY OF TWELVE**

14153-35
JLB

                                      CORRECT CARE SOLUTIONS, LLC, and
                                            MICHAEL KEEGAN, R.N.

                                BY:_____s/Jana L. Brady_____
                                   HEYL, ROYSTER, VOELKER & ALLEN
                                                 Jana L. Brady
                                              ARDC #: 6281390

HEYL, ROYSTER, VOELKER & ALLEN
Second Floor, National City Bank Building
120 West State Street
P.O. Box 1288
Rockford, Illinois 61105 1288
Telephone  815.963.4454
Facsimile  815.963.0399

14153-35
JLB

# PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument, Motion to Sever and Transfer Misjoined Claims/Parties to Western Division and/or Motion to Dismiss Claims Against Correct Care Solutions, LLC, and Michael Keegan, R.N.,, was served upon all attorneys to the above cause via the CM/ECF System on the  2nd  day of  May , 2017.

TO:

| **Attorneys for Plaintiff** | "Julie" Yihong Mao |
|---|---|
| Sheila A. Bedi | Sejal Zota |
| Vanessa del Valle | National Immigration Project of the National Lawyers Guild |
| Roderick and Solange MacArthur Justice Center | 14 Beacon Street, Suite 602 |
| Northwestern Pritzker School of Law | Boston, MA 02108 |
| 375 East Chicago Avenue | (617) 227-9727 |
| Chicago, IL 60611 | julie@nipnlg.ort |
| (312) 503-1271 | sejal@nipnlg.org |
| Sheila.bedi@law.northwestern.edu | |
| Vanessa.delvalle@law.northwester.edu | |

**Attorney for Ricardo Wong**
Craig Arthur Oswald
United States Attorney's Office
219 South Dearborn Street
Chicago, IL 60604
(312) 353-5300
*craig.oswald@usdoj.gov*

           _____s/Jana L. Brady_____
             Jana L. Brady

32335318_1