14153-35
JLB

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| WILMER CATALAN-RAMIREZ, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Case No. | 1:17-cv-03258 |
| | ) | | |
| RICARDO WONG, Field Office Director, | ) | | |
| Chicago, U.S. Immigration and Customs | ) | | |
| Enforcement ("ICE"); ICE AGENT JOHN | ) | | |
| DOES 1-6; MCHENRY COUNTY, | ) | | |
| MCHENRY COUNTY SHERIFF BILL PRIM, | ) | | |
| CHIEF OF CORRECTIONS DAVID | ) | | |
| DEVANE, CORRECT CARE SOLUTIONS, | ) | | |
| HEALTH ADMINISTRATOR MIKE | ) | | |
| KEEGAN, SUPERINTENDENT EDDIE | ) | | |
| JOHNSON, COMMANDER CHRISTOPHER | ) | | |
| KENNEDY, COMMANDER ALFRED | ) | | |
| NAGODE, CHICAGO POLICE OFFICER | ) | | |
| JOHN DOES 1-2, and CITY OF CHICAGO, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## DEFENDANTS CORRECT CARE SOLUTIONS, LLC, AND MICHAEL KEEGAN, R.N.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME Defendants, CORRECT CARE SOLUTIONS, LLC (incorrectly sued as "CORRECT CARE SOLUTIONS"), and MICHAEL KEEGAN, R.N., sued only in his official capacity as Health Services Administrator, by and through their attorneys, HEYL, ROYSTER, VOELKER & ALLEN, and for their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, state as follows:

14153-35
JLB

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 and the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), to redress the deprivation under color of law of Mr. Catalan-Ramirez's rights as secured by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

**Answer:**

**Defendants admit that Plaintiff purports to bring the action as alleged, but deny the allegations asserted against them.**

2.      Mr. Catalan-Ramirez, devoted partner and the father of young U.S. Citizen children, was the primary breadwinner for his family as a mechanic in a body shop. He resided with his children and their mother in the Back of the Yards neighborhood in Chicago.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph.**

3.      On January 15, 2017, as Mr. Catalan-Ramirez was leaving a restaurant in the Back of the Yards neighborhood, he was the victim of a drive-by shooting. He sustained multiple gunshot wounds that fractured his right skull and right shoulder, a traumatic brain injury, and partial paralysis on his left side. These injuries all require medical attention and rehabilitative services. As a result of these injuries, Mr. Catalan-Ramirez requires a left-side ankle brace and proper sneaker footwear to safely walk. He also requires multiple medications daily and physical therapy three times a week. Because he does not have use of his left arm, Mr. Catalan-Ramirez cannot feed, bathe, or dress himself properly without assistance. As a result of his traumatic brain injury, Mr. Catalan-Ramirez also lives with cognitive deficits.

14153-35
JLB

**Answer:**

**Defendants admit that Plaintiff's medical records from Stroger Hospital and Schwab Rehabilitation Hospital include a history of gunshot wounds, a traumatic brain injury and partial paralysis on his left side. Defendants admit that Plaintiff is receiving medications and medical attention including, but not limited to, physical therapy and occupational therapy, visits with an orthopedic surgeon, neurologist, psychiatrist, mental health professional, Dr. Young Kim, the nursing staff, an optometrist, and has been approved to use an orthotic, a cane and gym shoes for ambulation at the McHenry County Adult Detention Facility. Defendants deny that Plaintiff requires physical therapy three times a week as such was not recommended by his physical therapist. Upon information and belief, Plaintiff has been observed performing activities of daily living without assistance and is doing reasonably well. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

4.      On March 27, 2017, six unidentified ICE agents forced entry into Mr. Catalan-Ramirez's home without a warrant or consent. During this illegal raid, several ICE agents slammed Mr. Catalan-Ramirez on the ground and fractured his left shoulder, despite his pleas of pain and repeated notifications of his shooting-related injuries. The agents' use of force against Mr. Catalan-Ramirez was wholly unnecessary and disproportionate as Mr. Catalan-Ramirez did not resist in any way when the agents arrested him.

**Answer:**

**Defendants admit, upon information and belief, that Plaintiff's medical records reflect that a physician at Loyola University Medical Center suspected a left shoulder fracture in viewing an axial x-ray image performed on or about March 27, 2017, but deny that the radiologists interpreting the same x-rays and a subsequently performed CT scan of Plaintiff's left shoulder found any fractures; these diagnostic studies revealed no acute fracture according to the reports. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

5.      As a result of the agents' actions, Mr. Catalan-Ramirez sustained several injuries and continues to experience a deep sense of pain, humiliation, and fear.

**Answer:**

14153-35
JLB

**Defendants admit only that Plaintiff complained of a sore shoulder in connection with the March 27, 2017 occurrence. Defendants deny that Plaintiff related to them any other injuries, or the alleged emotions, in connection with the March 27, 2017 occurrence. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

6.      Upon information and belief, ICE conducted this raid based on false information obtained from the Chicago Police Department's Gang Database and/or another mechanism for tracking suspected gang members indicating that Mr. Catalan-Ramirez was a member of a Chicago street gang. Mr. Catalan Ramirez is not, nor has he ever been a member of a Chicago street gang.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

7.      After the raid, ICE took Mr. Catalan-Ramirez to McHenry County Adult Correctional Facility ("McHenry County Jail"), where he is currently detained. The McHenry County Jail has a contract with ICE to hold immigration detainees pending the resolution of their removal cases. While at McHenry County Jail, Mr. Catalan-Ramirez is being denied necessary medical care for the injuries he sustained during the January 2017 shooting and the additional injuries sustained as a results of the ICE agents' actions. As a result, Mr. Catalan-Ramirez is experiencing a number of medical issues including but not limited to extreme pain in his left shoulder and arm, losing sight in his left eye, and losing range of motion on the left side of his body. Mr. Catalan-Ramirez spends most of the day isolated in his cell due to the pain and his inability to safely walk without his left-side ankle brace and proper sneaker footwear.

14153-35
JLB

**Answer:**

**Defendants admit that Plaintiff is an ICE detainee at the McHenry County Adult Detention Facility. Defendants deny that Plaintiff has been denied medically necessary care and treatment, and further deny any suggestion that Plaintiff's condition and alleged injuries are a result of the medical care he has received at the jail. Defendants deny that Plaintiff is in extreme pain. Defendants deny that Plaintiff does not have access to an orthotic brace, gym shoes and a cane for ambulation. Defendants deny that Plaintiff is unable to walk safely. Defendants deny that Plaintiff has been held in isolation. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

**Answer:**

**Defendants admit that the Court has jurisdiction to hear the claims asserted by Plaintiff, but deny the allegations asserted against them.**

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events

giving rise to the claims asserted in this complaint occurred in this judicial district.

**Answer:**

**Defendants admit that venue is proper insofar as Plaintiff's detention and treatment are located in the Northern District of Illinois. Defendants deny that Plaintiff's detention and treatment are located in the Eastern Division of the Northern District of Illinois, however, and reserve their right to move to have the claims asserted against them severed and transferred to the Western Division of the Northern District of Illinois, and Defendants do not waive their right to have any claims against them brought to trial in the Western Division.**

**PARTIES**

**Plaintiff**

10.      Plaintiff Mr. Catalan-Ramirez is an immigrant of Latin American descent and

resident of Chicago, Illinois. Mr. Catalan-Ramirez has been detained by ICE at the McHenry

5

14153-35
JLB

County Jail in Woodstock, Illinois since March 27, 2017. Under the Americans with Disabilities Act, Mr. Catalan-Ramirez qualifies as a person with a serious disability.

**Answer:**

**Defendants admit that Plaintiff is detained at the McHenry County Adult Detention Facility. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

## DEFENDANTS

### ICE Defendants

11.     Defendant Ricardo Wong was at all times mentioned herein the Field Office Director of the Chicago ICE Field Office. At all times relevant to the events at issue in this case, Defendant Wong was acting under color of authority of the Department of Homeland Security. Defendant Wong oversees the Chicago ICE Field Office's functions and operations and the immigration detainees within its jurisdiction. Upon information and belief, Defendant Wong was the final policy-making authority for the raid of Mr. Catalan-Ramirez's home and is legally responsible for the violations against Mr. Catalan-Ramirez as alleged herein.  Defendant Wong is also responsible for the transportation and oversight of immigration detainees in McHenry County Jail. He is sued in his individual and official capacity.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

12.     Defendants ICE Agent John Does 1-6 are officials of the U.S. Immigration and Customs Enforcement. At all times relevant to the events at issue in this case, Defendants ICE agents were activing under color of authority of the Department of Homeland Security. On

6

14153-35
JLB

information and belief, these ICE agents were onsite at Mr. Catalan-Ramirez's home and were personally involved in the violations against Mr. Catalan-Ramirez. There are sued in their individual capacities.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

### McHenry County Defendants

13.     Defendant Bill Prim is the Sheriff of McHenry County. At all times relevant to the events at issue in this case, Defendant Prim was employed by the McHenry County Sheriff's Department in the capacity of Sheriff. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Prim promulgated rules, regulations, polices, and procedures as Sheriff of McHenry County for the provision of certain health care by medical personnel and correctional officers to detainees at the McHenry Jail. He is sued here in his official capacity.

**Answer:**

**Defendants admit that Bill Prim is currently the sheriff of McHenry County but are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

14.     Defendant David Devane is the Chief of Corrections at McHenry County Jail. At all times relevant to the events at issue in this case, Defendant Devane was employed by the McHenry County Sheriff's Department. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Devane was responsible for implementing the policies and procedures promulgated by Defendant Prim, supervising all staff, and managing all aspects of Jail operations. He is sued here in his official capacity.

7

14153-35
JLB

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

15.     Defendant McHenry County is a county of the State of Illinois. It oversees the McHenry County Sheriff's Department, which, in turn, operates the McHenry County Jail.

**Answer:**

**Defendants admit that McHenry County is located in the State of Illinois, and that the McHenry County Sheriff's Department operates the jail. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

### Correct Care Solutions Defendants

16.     Defendant Correct Care Solutions ("CCS") is a corporation headquartered in Nashville, Tennessee transacting business in Illinois. CCS, pursuant to a contract with McHenry County, provides medical and mental health evaluation, care, and treatment to detainees at McHenry County Jail. At all times relevant to the events at issue in this case, CCS was responsible for the implementation, oversight, and supervision of policies and practices at McHenry County Jail related to the provision of medical and mental health care. As an agent of McHenry County, CCS was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the doctor and nurses who work at the Jail.

**Answer:**

**Defendants deny that Correct Care Solutions, LLC, a Kansas limited liability corporation, is a corporation and also deny that "Correct Care Solutions" is a legal entity amenable to suit. Correct Care Solutions, LLC, admits that its principal office is located in Nashville, Tennessee and that it entered into an agreement with McHenry County, Illinois to provide certain services at the McHenry County Jail. Correct Care Solutions, LLC, denies that it is responsible for the implementation, oversight, and supervision of policies and practices at McHenry County Jail related to the provision of all medical and mental health care. Its obligations are limited to the specific provisions of the Agreement for Inmate Services**

14153-35
JLB

**entered into between Correct Care Solutions, LLC, and McHenry County. Correct Care Solutions, LLC, denies that the doctor who provides medical care at the jail is its employee or its agent. Defendants deny that they are agents of McHenry County. Defendants deny that Plaintiff has alleged facts sufficient to support a finding of state action.**

17.     Defendant Mike Keegan is the Health Administrator at McHenry County Jail and was employed by CCS during the relevant period. At all times relevant to the events at issue in this case, Defendant Keegan was acting under color of law and within the scope of his employment with CCS. Defendant Keegan was and is responsible for the medical care, treatment, and welfare of Mr. Catalan-Ramirez while he is detained at the Jail, and he has failed in that responsibility. Defendant Keegan is sued here in his official capacity.

**Answer:**

**Defendants admit that Michael Keegan is employed by Correct Care Solutions, LLC, to serve as the Health Services Administrator at the McHenry County Adult Detention Facility but deny that Mr. Keegan was in that position during what Plaintiff characterizes as the "relevant period." Defendants deny that Mr. Keegan "is responsible for the medical care, treatment, and welfare of Mr. Catalan-Ramirez while he is detained at the Jail" and also deny that Mr. Keegan "has failed in that responsibility." Defendants admit that Mr. Keegan is being sued solely in his official capacity. Defendants deny that Plaintiff has alleged facts sufficient to support of a finding of state action.**

## CPD Defendants

18.     Defendant Eddie Johnson is the Superintendent of the Chicago Police Department. At all times relevant to the events at issue in this case Defendant Johnson was employed by the Chicago Police Department. As such, he was acting under color of law. At all times relevant to the events at issue in this case Defendant Johnson promulgated rules, regulations, polices, and procedures at the Chicago Police Department. Defendant Johnson is responsible for supervising all CPD officers and managing all operations at the CPD. He is sued here in his official capacity.

14153-35
JLB

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

19.     Defendant Christopher J. Kennedy is the Commander of the Gang Investigations Division and Defendant Alfred Nagode is the Deputy Chief of the Gang Enforcement Division. At all times relevant to the events at issue in this case, Defendants Kennedy and Nagode were employed by the Chicago Police Department. As such, they were acting under color of law. At all times relevant to the events at issue in this case, Defendants Kennedy and Nagode were in charge of maintaining and updating the CPD's Gang Database. They are sued here in their official and individual capacities.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

20.     Defendant CPD Officer John Does 1-2 were employees of the Chicago Police Department during the relevant time period. At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with the Chicago Police Department. These defendants wrongfully labeled Mr. Catalan-Ramirez as a Chicago street gang member and included him in CPD's Gang Database. These defendants are sued here in their individual capacities.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

21.     Defendant City of Chicago is and at all times mentioned herein was a municipality organized and operating under the statues of the State of Illinois.

10

14153-35
JLB

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

## FACTUAL ALLEGATIONS

### The Raid

22.     On the morning of March 27, 2017, two ICE agents approached Celene Adame, Mr. Catalan-Ramirez's partner, outside her front yard. The ICE agents did not identify themselves to Ms. Adame. They were wearing bullet proof vests with "police" written on the vests. They presented a picture to Ms. Adame and asked whether she recognized the person in the picture. Assuming that they were local police, Ms. Adame replied that she did not recognize the person in the picture. The men then asked her where she was going and she explained that she was going to drop off her children at the school across the street.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

23.     When Ms. Adame returned home, the same two men were inside her walled yard and on the exterior stairs approaching her residence on the third floor of the apartment building. The men asked her again if she recognized the person in the picture, and she again replied that she did not. The men then asked if they could speak with her husband, and she explained that they could not because he was sleeping. She politely asked the men to leave.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

14153-35
JLB

24.     Ms. Adame then heard her three-year-old son crying inside the apartment and yelling "mama," so she opened the door to let herself in. When she opened the door, she saw that two different ICE agents were already inside her apartment. Ms. Adame believes that these men entered her apartment through the kitchen door in the back, which she left unlocked.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

25.     When she was standing by the door, Ms. Adame also noticed that there were two additional ICE agents outside going up to the attic. The attic is part of the building, next to the porch, and can be reached by climbing up some steps.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

26.     When Ms. Adame opened the door and saw the two agents already inside her apartment, she turned toward the two agents standing beside her and asked them, "what are you doing here? Can you please leave?" The agents ignored her and went inside the apartment. The agents did not ask permission before entering her apartment. Ms. Adame did not give them permission to enter, nor did any other resident of the home. The ICE agents also did no present Ms. Adame a warrant to enter her apartment.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

14153-35
JLB

27.    When she entered the apartment, the two agents who were already inside had flashlights and were going room by room—they checked the bathroom, the children's bedroom, and Ms. Adame's and Mr. Catalan-Ramirez's bedroom.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph. and, as a result, deny them**

28.    One of the ICE agents who is Latino asked Ms. Adame, "where are the guns and drugs?" Ms. Adame replied, "what guns or drugs?" She repeatedly told him that the man they were looking for is not her husband, and that they were looking for a different person.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

29.    Mr. Cataln-Ramirez was asleep in his bedroom. ICE agents went to the bedroom and tried to wake up Mr. Catalan-Ramirez. Ms. Adame also approached the bedroom. The ICE agents flashed their flashlight on Mr. Catalan-Ramirez's face and pulled the covers off him. Mr. Catalan-Ramirez woke up and stood up with one leg and slowly hobbled out to the living room because he was unable to walk properly without his brace and sneakers.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

30.    The ICE agents asked for Mr. Catalan-Ramirez's and Ms. Adame's identification. Assuming they were police because the ICE agents never identified themselves, Ms. Adame provided the men with Mr. Catalan-Ramirez's birth certificate and copy of his passport.

14153-35
JLB

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

31.     Ms. Adame repeatedly asked the ICE agents if they had a warrant. She also asked the agents who they were and why they were here. The ICE agents never answered. Upon information and belief, the ICE agents did not have a warrant that permitted them to enter or search Mr. Catalan-Ramirez's home or to detain him without voluntary consent or exigent circumstances.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

32.     At some point, while they were questioning Mr. Catalan-Ramirez, the ICE agents began to surround Mr. Catalan-Ramirez.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

33.     Fearing an arrest, Mr. Catalan-Ramirez told the agents in English that he is sick and that he is paralyzed on his left side. He politely asked that if they were going to arrest him, to please handcuff him in the front.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

34.     One of the agents took Mr. Catalan-Ramirez's right hand and put his arm behind his back. Another agent took Mr. Catalan-Ramirez's left hand and tried to put his arm behind his

14153-35
JLB

back, but because his left arm is partially paralyzed, the arm was hard to maneuver. At that

point, the ICE agents slammed Mr. Catalan-Ramirez to the floor. Three agents pinned him to the

ground. One of these agents kneed him in the back. Mr. Catalan-Ramirez again asked that his

hands be handcuffed in the front rather than the back because of his injuries. Ignoring his

please, an agent twisted Mr. Catalan-Ramirez's arm and handcuffed him tightly from the back.

Mr. Catalan-Ramriez begged the agents to stop, yelling "mi brazo", "mi brazo," "quebra mi

brazo" (you are breaking my arm). The agents also slammed his head on the floor, causing him

immediate pain due to his prior skull fracture and traumatic brain injury. Crying, Mr. Catalan-

Ramirez tried to tell the agents about the pain in both his head and shoulder, but they did not

appear to believe him.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in
this paragraph and, as a result, deny them.**

35.     While the three agents were aggressively arresting Mr. Catalan-Ramirez, another

three agents or so grabbed Ms. Adame, threw her on the sofa, and attempted to forcibly hold

her on the sofa. While she was witnessing the agents' brutal attack on her husband, Ms. Adame

explained to the agents in Spanish that Mr. Catalan-Ramirez had been a victim of a crime and

that half of his body was paralyzed. At least one of the ICE agents spoke Spanish and clearly

understood what she was saying.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in
this paragraph and, as a result, deny them.**

14153-35
JLB

36.     When Mr. Catalan-Ramirez was on the ground being handcuffed, he yelled out to Ms. Adame to film. Ms. Adame eventually retrieved her phone from the kitchen and began taping the arrest. The ICE agents ordered her to stop taping and tried to take her phone away, but she told them no and continued taping. After she began taping, the agents stopped questioning Mr. Catalan-Ramirez.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

37.     Mr. Catalan-Ramirez's and Ms. Adame's three-year-old son witnessed the ICE agents' arrest of his father. He was crying, screaming, and appeared frightened. The ICE agents yelled at him to go to his room, but he stayed in the living room with his parents. He repeatedly asked the ICE agents to let his father go. Their son continues to have nightmares regarding the ICE raid and the arrest of his father in which he wakes up late at night frightened and screaming for his father.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

38.     As a result of the home raid and ICE agents' brutality, both Ms. Adame and her three-year-old son have suffered trauma and emotional distress. Both are now fearful of police and experience constant anxiety.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

14153-35
JLB

39.     After the ICE agents arrested Mr. Catalan-Ramirez, they grabbed him from behind and partly carried him away to their car. Mr. Catalan-Ramirez could not walk properly without the use of his ankle brace, and so two agents had to lift him up by his arms, causing him further pain in his left shoulder. The agents would not let him bring his ankle brace. The agents also would not let Mr. Catalan-Ramirez bring all of his necessary medications. Mr. Catalan-Ramirez was taken out of the apartment wearing nothing but sandals, shorts, and a T-shirt.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

40.     At no time before placing Mr. Catalan-Ramriez under arrest did the ICE agents ask Mr. Catalan-Ramirez about his legal right to be in the United States, nor did Mr. Catalan-Ramirez tell the agents anything about his immigration status.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

41.     After the ICE agents placed Mr. Catalan-Ramirez in their care, he continued to cry from all the pain he was experiencing. The ICE agents then drove Mr. Catalan-Ramirez to emergency room at Loyola Hospital. The doctor at Loyola Hospital diagnosed Mr. Catalan-Ramirez with a fractured left shoulder and recommended that he see an orthopedic specialist immediately to get treatment.

**Answer:**

**Defendants admit, upon information and belief, that Plaintiff's medical records reflect that a physician at Loyola University Medical Center suspected a left shoulder fracture in viewing an axial x-ray image performed on or about March 27, 2017, but deny that the**

17

14153-35
JLB

**radiologists interpreting the same x-rays and a subsequently performed CT scan of Plaintiff's left shoulder found any fractures; these diagnostic studies revealed no acute fracture, according to the reports. Defendants admit that Plaintiff was seen by an orthopedic surgeon on April 5, 2017 for his shoulder, and that a follow up appointment is scheduled. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

42.    After the hospital, the ICE agents drove Mr. Catalan-Ramirez to the ICE filed office for processing. While there, one ICE agent asked Mr. Catalan-Ramirez if he was associated with any gangs. Mr. Catalan-Ramirez replied "no." Mr. Cataln-Ramirez is not and has never been a member of any Chicago street gang.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

### ICE Targeted Mr. Catalan-Ramirez Because It Received False Information from the Chicago Police Department

43.    The Chicago Police Department maintains a Gang Database of all suspected gang members in the City of Chicago. This Gang Database is arbitrary, over-inclusive, and contains false information. Many people are included in the Gang Database who are not in fact members of any street gang. Upon information and belief, the Chicago Police Department also uses a number of other similarly arbitrary, over-inclusive mechanisms to track and report on people who are suspected of gang membership. These other mechanisms are also riddled with false information.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

14153-35
JLB

44.     Upon information and belief, the Chicago Police Department at some point in 2014 or 2015 falsely labeled Mr. Catalan-Ramirez as a gang member and included him in its Gang Database and/or another mechanism for tracking suspected gang members.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

45.     CPD never confronted Mr. Catalan-Ramirez with any evidence that he was gang-affiliated before including him in the Gang Database and/or another mechanism for tracking suspected gang members, and never informed him of his inclusion in the Gang Database and/or another mechanism for tracking suspected gang member. Mr. Catalan-Ramirez also never had the opportunity to challenge his inclusion in the Gang Database and/or another mechanism for tracking suspected gang members.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

46.     An ICE deportation officer, Officer "Pols," confirmed that ICE received information that Mr. Catalan-Ramirez was affiliated with a Chicago street gang from the Chicago Police Department and the ICE targeted Mr. Catalan-Ramirez as part of its gang operations.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

47.     Upon information and belief, in the past recent months, ICE has conducted a number of raids in the primarily Latino neighborhoods in Chicago as part of its "gang op." ICE

14153-35
JLB

agents have arrested a number of individuals during these raids who they perceived to be gang members due to false information they received from the Chicago Police Department.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

48. On the same day that Mr. Catalan-Ramirez was arrested by ICE, ICE raided another home and attempted to arrest a young man who is a U.S. Citizen, and ended up shooting his father in the process. ICE indicated on Twitter that this raid was part of "a gang op." The young man is not a gang member.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

49. Upon information and belief, ICE is receiving false information that individuals are gang member from the Chicago Police Department's Gang Database.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

50. The City of Chicago is a "sanctuary city." The Welcoming City Ordinance, which was first passed by City Council in 2012 and most recently amended in 2016, provides certain protections to undocumented immigrants. Among those protections, the Chicago Police Department cannot share information regarding an individual's immigration status with federal authorities unless required to do so by federal law.  However, the Welcoming City Ordinance does not prohibit the Chicago Police Department from sharing other information about an

14153-35
JLB

individual with ICE, such as all the identifying information about individuals contained in CPD's

Gang Database.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

51.     The City of Chicago is therefore not a sanctuary city for those individuals like Mr.

Catalan-Ramirez who have been falsely labeled by CPD as a gang member and then

subsequently targeted by ICE because CPD shared this false information.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

52.     Upon information and belief, gang databases disproportionately identify African

American and Latino men as gang members. "Research indicates that law enforcement gang

task forces often label large numbers of youth of color as gang members with little or no

evidence of gang involvement. This racism is further increased by a complete refusal to

recognize and address primarily white gangs." Lillian Dowdell Drakeford, *The Race Controversy in*

*American Education* (2015), at 160. Examples of this racial bias are seen in: the Los Angeles

County gang database, where approximately half of all African American men between the ages

of 16 and 24 are listed as gang member or associates, *id.;* the Denver Police Department gang

database, where 2 out of every 3 African American males in Denver were listed as a gang

member and 1 out of every 4 Latinos,, Julie Barrows & C. Ronald Huff, *Gang & Public Policy:*

*Constructing and Deconstructing Gang Databases,* 8 CRIMINOLOGY & PUB. POL'Y 675, 683

(2009); and the Minnesota gang database, which is 44 percent African American and 36 percent

14153-35
JLB

white, K. Babe Howell, *Fear Itself: The Impact of Allegations of Gang Affiliation on Pre-trial Detention,* 23 ST. THOMAS L. REV. 620 (2011). "The vague criteria, secrecy of the process, and lack of judicial review create a danger that police officers add many young, minority males to the database simply because they wear hip-hop clothing and live in poverty-stricken, high-crime areas." Linda S. Beres & Thomas D. Griffith, *Demonizing Youth,* 34 LOY, L.A. L. REV. 747, 761 (2001).

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

53.     City of Chicago officials know that the Gang Database is rife with inaccuracies and that many individuals included in the database have no gang affiliation. City of Chicago officials know that when this false information is provided to ICE it will be used against individuals in removal proceedings and that individuals have no recourse to challenge their inclusion in the database.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

### Deficient Medical Care at McHenry County Jail

54.     Mr. Catalan-Ramirez was transported to McHenry County Jail on March 27, 2017.

**Answer:**

**Defendants admit this allegation.**

55.     Mr. Catalan-Ramirez is experiencing significant pain in his left shoulder as a result of the fracture he sustained during his arrest by the ICE agents. He has been seen once by an

14153-35
JLB

orthopedic doctor at Mercy Woodstock Medical Center, and he is still waiting on a follow up

appointment to receive treatment. The delay in treatment of his shoulder could cause worsening

and perhaps permanent injury.

**Answer:**

**Defendants admit, upon information and belief, that Plaintiff's medical records reflect that a physician at Loyola University Medical Center suspected a left shoulder fracture in viewing an axial x-ray image performed on or about March 27, 2017, but deny that the radiologists interpreting the same x-rays and a subsequently performed CT scan of Plaintiff's left shoulder found any fractures; these diagnostic studies revealed no acute fracture according to the reports. Defendants admit that Plaintiff was seen by an orthopedic surgeon for his shoulder on April 5, 2017, a CT scan was performed pursuant to the orthopedic surgeon's recommendation, and that a follow up appointment has been made. Defendants deny that Plaintiff is in significant pain. Defendants deny that there was a delay in treatment. Defendants deny any suggestion that Plaintiff has not received medically necessary care and treatment. Defendants deny any suggestion that Plaintiff's condition and injuries were caused by the care he has received since being detained at the McHenry County Adult Detention Facility. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

56.    When ICE agents slammed Mr. Catalan-Ramirez's head on the ground during the

arrest, they further exacerbated his traumatic brain injury. As a result, Mr. Catalan-Ramirez is

now losing sight in his left eye and is experiencing numbness on the left side of his face. After

repeated requests for medical treatment by Mr. Catalan-Ramirez and his counsel, the medical

staff at the McHenry County Jail finally referred Mr. Catalan-Ramirez to a neurologist on April 20,

2017, however, that appointment still has not occurred to this date.

**Answer:**

**Defendants are without knowledge sufficient to admit or deny whether, "[w]hen ICE agents slammed Mr. Catalan-Ramirez's head on the ground during the arrest, they further exacerbated his traumatic brain injury," or whether ICE agents caused Plaintiff to lose sight in his left eye or experience numbness on the left side of his face and, as a result, deny them. Defendants deny the allegation that Plaintiff has not been seen by a neurologist: Plaintiff was evaluated by a neurologist on May 8, 2017. Defendants deny any**

14153-35
JLB

**suggestion that Plaintiff has not received medically necessary care and treatment. Defendants deny any suggestion that Plaintiff's condition and injuries were caused by them or the care he has received since being detained at the McHenry County Adult Detention Facility. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

57.     Prior to Mr. Catalan-Ramirez's arrest, he was receiving out-patient therapy three times a week. The therapy was helping him gain motion back in his left arm, hand, leg, and foot. Mr. Catalan-Ramirez's rehabilitation was progressing and he was beginning to slowly walk again in the days before he was arrested.

**Answer:**

**Defendants deny that Plaintiff was undergoing out-patient therapy three times per week before his detention on March 27, 2017. Defendants admit that Plaintiff has been able to ambulate since his detention at the McHenry County Adult Detention Facility. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

58.     Since being detained at McHenry County Jail, Mr. Catalan-Ramirez has been unable to obtain the necessary physical therapy and as a result, he is losing range of motion on his left side and regressing in his rehabilitation. His left arm is now completely unmovable.

**Answer:**

**Defendants deny these allegations.**

59.     After repeated requests for medical treatment by Mr. Catalan-Ramirez and his counsel, the medical staff at the McHenry County Jail finally referred Mr. Catalan-Ramirez to an occupational and physical therapist on April 20, 2017, however, Mr. Catalan-Ramirez still has not received these appointments to this date. Mr. Catalan-Ramirez faces serious risk of permanent damage because of this over month-long interruption in rehabilitative services. If Mr. Catalan-

14153-35
JLB

Ramirez does not receive the necessary rehabilitative services immediately, he could become permanently physically disabled.

**Answer:**

**Defendants admit that Plaintiff has been evaluated by, and has undergone therapy with, an occupational therapist and a physical therapist since being detained at the McHenry County Adult Detention Facility. Defendants deny the remaining allegations of this paragraph.**

60.     Ms. Adame was able to provide Mr. Catalan-Ramirez his ankle brace after he was placed in custody. However, after about two weeks at the Jail, the binding strap on Mr. Catalan-Ramirez's ankle brace broke, leaving him unable to use the brace and walk safely within the Jail. Medical staff at the Jail have refused Mr. Catalan-Ramirez's request to replace his brace. Additionally, Mr. Catalan-Ramirez is unable to wear the proper sneaker footwear in the Jail in order to wear his leg brace. He has requested to receive the proper sneaker footwear, but security staff and medical staff have refused his request. Without the proper sneaker footwear and brace, Mr. Catalan-Ramirez risks serious injury, particularly because of his existing brain injury. Because Mr. Catalan-Ramirez cannot walk safely around the Jail, he spends most of his days in his cell.

**Answer:**

**Defendants admit that Plaintiff's ankle brace was broken, but state that he was referred to an orthotic provider who fixed it. Plaintiff has access to his shoes, brace and a cane. Defendants deny the remaining allegations of this paragraph.**

61.     Mr. Catalan-Ramirez requires a number of medications to deal with the pain from all of his injuries and medication to help treat his paralysis. The medical staff at McHenry County

14153-35
JLB

Jail have recently stopped giving Mr. Catalan-Ramirez his medication that helps treat his paralysis.

**Answer:**

**Defendants admit that Plaintiff has been receiving medications since his detention on March 27, 2017. Defendants deny the remaining allegations of this paragraph.**

62.     On or around April 12, 2017, the doctor at the Jail, Dr. Young Kim, interrogated Mr. Catalan-Ramirez about medical requests and communications with counsel. Dr. Kim accused Mr. Catalan-Ramirez of misrepresenting his injuries and medical needs. Mr. Catalan-Ramirez felt that the intended goal of the meeting was to intimidate him and convince him that he did not have urgent and unresolved medical needs.

**Answer:**

**Defendants deny these allegations**.

63.     Due to his injuries, Mr. Catalan-Ramirez cannot dress, feed, or bathe himself properly without assistance. Before he was arrested, Mr. Catalan-Ramirez relied on Ms. Adame to help him with his daily needs. Furthermore, his left arm is in a sling due to his fractured shoulder and he has lost all motion in his left arm and hand due to the interruption in his physical therapy. He has repeatedly requested assistance from correctional officers and nurses, but they refuse to help him. When Mr. Catalan-Ramirez attempts to dress, feed, and bath himself without the assistance of others, he experiences significant pain.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegation concerning what assistance Ms. Adame provided to Plaintiff prior to his detention on March 27, 2017 and, as a result, deny them. Defendants deny the remaining allegations.**

14153-35
JLB

64.     Mr. Catalan-Ramirez has gone days without showering because it is very difficult and painful for him to bathe himself. Mr. Catalan-Ramirez also has gone days without changing his clothes because he relies on other detainees to help him put on his pants and shirt. He also relies on other detainees to help him prepare and eat his food.

**Answer:**

**Upon information and belief, Plaintiff has taken showers, changed his clothes and eaten meals since being detained at the McHenry County Adult Detention Facility. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

65.     Mr. Catalan-Ramirez has been reprimanded by correctional officers for enlisting other detainees' help in dressing, eating, and putting on his ankle brace. When one correctional officer saw Mr. Catalan-Ramirez receiving help from another detained, the officer threatened to place Mr. Catalan-Ramirez and any person assisting him in segregation as punishment if they continued to help him. Because of the officer's threats, some detainees are now afraid to help Mr. Catalan-Ramirez. Without the assistance of detainees or staff, Mr. Catalan-Ramirez continues to struggle meeting his basic needs.

**Answer:**

**Upon information and belief, Plaintiff does, and is permitted to, have other detainees and staff assist him with his activities of daily living. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

66.     The correctional officers also bully and harass Mr. Catalan-Ramirez because of his disabilities. Officers have taunted him, made fun of him, and used slurs against him, including calling him gay when he asked for their assistance in dressing.

14153-35
JLB

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

67.     Due to the extreme pain Mr. Catalan-Ramirez is experiencing throughout his body, he cannot sleep at night. The pain is worsening each day.

**Answer:**

 **Defendants deny these allegations**.

68.     As a result of his arrest by ICE agents, and his detention at McHenry County Jail, Mr. Catalan-Ramirez suffered and continues to suffer extreme emotional distress. He is exhibiting symptoms of depression, including insomnia, depressed mood, fatigue, crying episodes, and diminished concentration. He feels humiliated and dehumanized by the staff at the Jail. He is extremely stressed and does not feel like he can last much longer at the Jail.

**Answer:**

**Defendants deny any suggestion or allegation that Plaintiff's alleged symptoms were caused by them or the care he has received since being detained at the McHenry County Adult Detention Facility. Defendants deny that they have observed the alleged symptoms. Defendants are without information sufficient to admit or deny the remaining allegations asserted in this paragraph and, as a result, deny them.**

**Mr. Catalan-Ramirez is Forced to Wear Shackles During Transport**

69.     Mr. Catalan-Ramirez has been transported out of McHenry County Jail on a number of occasions to attend immigration court hearings and to go to the hospital. Each time he is transported, his hand and legs are shackled.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

14153-35
JLB

70.    It is the policy and practice at McHenry County Jail to handcuff and shackle all detainees during transport for security purposes.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

71.    The shackles make it even more difficult for Mr. Catalan-Ramirez to walk. The shackles cause Mr. Catalan-Ramirez extreme physical pain due to his many injuries, embarrassment, humiliation, and mental and emotional distress. Mr. Catalan-Ramirez feels like he is being unfairly treated like an animal and a criminal. He feels that being forced to wear shackles falsely portrays him as a dangerous person.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

72.    Mr. Catalan-Ramirez has no history of violence or disruption in custody or in court and would pose no threat to the safety and security of others or threat of flight if allowed to be transported without physical restraints.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

73.    The transport vans at the McHenry County Jail are not equipped with seatbelts. When Mr. Catalan-Ramirez is transported, he is not provided with a seatbelt. Mr. Catalan-Ramirez's safety is thus at risk each time he is transported out of McHenry County Jail.

14153-35
JLB

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

### Mr. Catalan-Ramirez's Damages

74.     Mr. Catalan-Ramirez experienced a traumatic and violent arrest at the hands of unidentified ICE agents precipitated by false information gathered from the CPD's Gang Database and/or another mechanism for tracking suspected gang members. As a result, Mr. Catalan-Ramirez—apart from the emotional pain and humiliation he endured—sustained, among other things, a fractured shoulder, loss of eyesight, and additional paralysis on his left side.

**Answer:**

**Defendants admit, upon information and belief, that Plaintiff's medical records reflect that a physician at Loyola University Medical Center suspected a left shoulder fracture in viewing an axial x-ray image performed on or about March 27, 2017, but deny that the radiologists interpreting the same x-rays and a subsequently performed CT scan of Plaintiff's left shoulder found any fractures. Defendants are without information sufficient to admit or deny the remaining allegations of this paragraph and, as a result, deny them.**

75.     Mr. Catalan-Ramirez continues to experience pain and injury as a result of the harm inflicted on him by ICE agents and fails to receive appropriate medical care in McHenry County Jail.

**Answer:**

**Defendants deny these allegations.**

76.     As a result of the foregoing, Mr. Catalan-Ramirez has suffered and continues to suffer tremendous damages, including but not limited to physical harm, mental suffering, and loss of a normal life, all directly and proximately caused by the Defendants' actions.

14153-35
JLB

**Answer:**

**Defendants deny these allegations.**

## COUNT I – UNLAWFUL ENTRY AND UNREASONABLE SEIZURE
### (Fourth Amendment Claim for Damages under *Bivens* against Defendant Wong and ICE Agent John Does 1-6)

Defendants make no answer to Count I as it is not asserted against them. To the extent that Count I may be construed as being made against Defendants, Defendants deny the allegations of Count I.

## COUNT II-EXCESSIVE FORCE
### (Fourth Amendment Claim for Damages under *Bivens* Against Defendants ICE Agent John Does 1-3)

Defendants make no answer to Count II as it is not asserted against them. To the extent that Count II may be construed as being made against Defendants, Defendants deny the allegations of Count II.

## COUNT III-FAILURE TO PROVIDE MEDICAL CARE
### (Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 Against Defendant Prim, Devane, Keegan, and CCS)

87.     Mr. Catalan-Ramirez repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Answer:**

**Defendants repeat and reassert their answers to the preceding paragraphs of this Answer as if fully set forth herein.**

31

14153-35
JLB

88.    Count III is alleged against Defendant Sheriff Prim in his official capacity, Defendant David Devane in his official capacity, Defendant Mike Keegan in his official capacity, and Defendant Correct Care Solutions.

**Answer:**

**Defendants admit that Plaintiff has asserted Count III as stated, but deny the allegations and counts asserted against them.**

89.    Mr. Catalan-Ramirez was deprived and continues to be deprived of his rights under the Fourteenth Amendment to be provided with adequate medical treatment and care while at the McHenry County Jail.

**Answer:**

**Defendants deny these allegations.**

90.    The Defendants' failures to take appropriate steps to provide Mr. Catalan-Ramirez with adequate treatment for his very serious medical needs, as described more fully in the preceding paragraphs, constitute deliberate indifference to Mr. Catalan-Ramirez's serious medical needs and violate his Fourteenth Amendment rights. Defendants know of and disregard the substantial risk of injury to Mr. Catalan-Ramirez by failing to provide adequate medical care.

**Answer:**

**Defendants deny these allegations.**

91.    Mr. Catalan-Ramirez seeks injunctive and declaratory relief against all official capacity Defendants and Defendant CCS to prevent the continued violation of his constitutional rights.

14153-35
JLB

**Answer:**

**Defendants deny that there has been any violation of Plaintiff's constitutional rights, and further deny that Plaintiff is entitled to the relief sought.**

### COUNT IV—AMERICAN WITH DISABILITIES ACT ("ADA")
### (ADA Claim for Declaratory and Injunctive Relief Against Defendant Sheriff Prim in his Official Capacity)

Defendants make no answer to Count IV as it is not asserted against them. To the extent that Count IV may be construed as being made against Defendants, Defendants deny the allegations of Count IV.

### COUNT V- RETALIATION
### (First and Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 Against Defendants Prim, Devane, Keegan, and CCS)

96. Mr. Catalan-Ramriez repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Answer:**

**Defendants repeat and reassert their answers to the preceding paragraphs of this Answer as if fully set forth herein.**

97. Count V is alleged against Defendant Sheriff Prim in his official capacity, Defendant David Devane in his official capacity, Defendant Mike Keegan in his official capacity, and Defendant Correct Care Solutions.

**Answer:**

**Defendants admit that Plaintiff has asserted Count V as stated, but deny the allegations and counts asserted against them.**

98. Medical staff at the Jail violated Mr. Catalan-Ramirez's rights guaranteed by the First Amendment, as incorporated by the Fourteenth Amendment, when they intimidated him

33

14153-35
JLB

and accused him of misrepresenting his injuries and medical needs after he, through counsel, contacted ICE officials to request urgent medical assistance.

**Answer:**

**Defendants deny these allegations.**

99.     Security staff at the Jail violated and continue to violate Mr. Catalan-Ramirez's rights guaranteed by the First Amendment, as incorporated by the Fourteenth Amendment, by threatening him with placement in segregation whenever he asks for other detainees' assistance with his daily needs.

**Answer:**

**Defendants are without information sufficient to admit or deny the allegations asserted in this paragraph and, as a result, deny them.**

100.     Mr. Catalan-Ramirez seeks injunctive and declaratory relief against these official capacity Defendants and Defendant CCS to prevent the continued violation of his constitutional rights.

**Answer:**

**Defendants deny that there has been any violation of Plaintiff's constitutional rights, and further deny that Plaintiff is entitled to the relief sought.**

**COUNT VI – DENIAL OF DUE PROCESS**
**(Fifth and Fourteenth Amendment Claim for declaratory and Injunctive Relief under 42 U.S.C. § 1983 Against Defendants Prim, Devane, and Wong)**

Defendants make no answer to Count VI as it is not asserted against them. To the extent that Count VI may be construed as being made against Defendants, Defendants deny the allegations of Count VI.

14153-35
JLB

### COUNT VII – DENIAL OF DUE PROCESS
### (Fourteenth Amendment Claim for Damages under 42 U.S.C. § 1983 Against Defendants Superintendent Johnson, Commander Christopher Kennedy, Commander Alfred Nagode, and Officer John Does 1-2)

Defendants make no answer to Count VII as it is not asserted against them. To the extent that Count VII may be construed as being made against Defendants, Defendants deny the allegations of Count VII.

### COUNT VIII- UNLAWFUL POLICY AND PRACTICE
### (*Monell* Claim for Damages under 42 U.S.C. § 1983 Against the City of Chicago)

Defendants make no answer to Count VIII as it is not asserted against them. To the extent that Count VIII may be construed as being made against Defendants, Defendants deny the allegations of Count VIII.

### COUNT IX – ILLINOIS CIVIL RIGHTS ACT ("ICRA")
### (ICRA Claim for Damages Against Defendant City of Chicago)

Defendants make no answer to Count IX as it is not asserted against them. To the extent that Count IX may be construed as being made against Defendants, Defendants deny the allegations of Count IX.

### COUNT X – INDEMNIFICATION
### (State Law Claim Against the City of Chicago)

Defendants make no answer to Count X as it is not asserted against them. To the extent that Count X may be construed as being made against Defendants, Defendants deny the allegations of Count X.

14153-35
JLB

## **AFFIRMATIVE DEFENSES**

### *FIRST AFFIRMATIVE DEFENSE*

Defendants assert as their First Affirmative Defense to the allegations and claims asserted in Plaintiff's Complaint, and all supplements and amendments thereto, that Plaintiff's request for injunctive relief is subject to the confines of Section 3626(a)(2) of the Prison Litigation Reform Act, which provides:

> (2) Preliminary injunctive relief.— In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. Section 3626(a)(2).

### *SECOND AFFIRMATIVE DEFENSE*

Defendants assert as their Second Affirmative Defense to the allegations and claims asserted in Plaintiff's Complaint, and all supplements and amendments thereto, that the McHenry County Adult Detention Facility had and has a grievance procedure available to Plaintiff, Plaintiff has not utilized the grievance procedure, and Plaintiff was detained at the jail at the time this lawsuit was filed; consequently, Plaintiff failed to exhaust his administrative remedies, as mandated by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997(e)(a).

14153-35
JLB

### THIRD AFFIRMATIVE DEFENSE

Defendants assert as their Third Affirmative Defense to the allegations and claims asserted in Plaintiff's Complaint, and all supplements and amendments thereto, that to the extent that privately employed healthcare providers in this context are entitled to qualified immunity, Defendants are entitled to qualified immunity in that they did not violate any of Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

### FOURTH AFFIRMATIVE DEFENSE

Defendants assert as their Fourth Affirmative Defense to the allegations and claims asserted in Plaintiff's Complaint, and all supplements and amendments thereto, that Michael Keegan has not been personally involved in the alleged violations and has not made any decisions concerning Plaintiff's care which would support an official capacity claim.

### FIFTH AFFIRMATIVE DEFENSE

Defendants assert as their Fifth Affirmative Defense to the allegations and claims asserted in Plaintiff's Complaint, and all supplements and amendments thereto, that no policy, practice or decision of any policy makers of Correct Care Solutions, LLC, was the moving force behind the violations being alleged by Plaintiff; as such, there can be no *Monell* liability in the context of this case.

### SIXTH AFFIRMATIVE DEFENSE

Defendants assert as their Sixth Affirmative Defense to the allegations and claims asserted in Plaintiff's Complaint, and all supplements and amendments thereto, that Plaintiff is

14153-35
JLB

receiving all medically necessary care and is not being harassed or retaliated against; as a result, Plaintiff's request for injunctive relief is moot.

### **DEMAND FOR JURY TRIAL**

Defendants hereby demand a trial by a jury of twelve on any and all allegations of Plaintiff's First Amended Complaint, any Affirmative Defenses asserted thereto, and for any and all issues properly triable by jury, and further demand that the trial be held in the Western Division of the Northern District of Illinois.

### **PRAYER FOR RELIEF**

WHEREFORE, Defendants, CORRECT CARE SOLUTIONS, LLC (improperly named a defendant as "Correct Care Solutions") and MICHAEL KEEGAN, having fully answered Plaintiff's First Amended Complaint, deny that Plaintiff is entitled to any of the relief he requests against them, and furthermore pray for judgment in their favor and against Plaintiff, and that they can recover their costs of suit accordingly.

CORRECT CARE SOLUTIONS, LLC, and
MICHAEL KEEGAN, R.N.


BY:_____
HEYL, ROYSTER, VOELKER & ALLEN
Jana L. Brady
ARDC #: 6281390

HEYL, ROYSTER, VOELKER & ALLEN
120 West State Street, Second Floor
P.O. Box 1288
Rockford, Illinois 61105 1288
Telephone  815.963.4454
Facsimile  815.963.0399

14153-35
JLB

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument, **Answer and Affirmative Defenses**, was served upon all attorneys to the above cause via the CM/ECF System on the 22nd day of May, 2017.

TO:

*Attorneys for Plaintiff*
Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
Sheila.bedi@law.northwestern.edu
Vanessa.delvalle@law.northwester.edu

"Julie" Yihong Mao
Sejal Zota
National Immigration Project of the National Lawyers Guild
14 Beacon Street, Suite 602
Boston, MA 02108
(617) 227-9727
julie@nipnlg.ort
sejal@nipnlg.org

*Attorney for Ricardo Wong*
Craig Arthur Oswald
Alex Harms Hartzler
United States Attorney's Office
219 South Dearborn Street
Chicago, IL 60604
(312) 353-5300
craig.oswald@usdoj.gov
Alex.Hartzler@usdoj.gov

*Attorney for McHenry County, McHenry County Sheriff Bill Prim, Chief of Corrections David Devane*
George M. Hoffman
Michelle J. Courier
McHenry County State's Attorney's Office
2200 N. Seminary Ave, Ste. 150
Woodstock, IL 60098
(815) 334-4159
mjcourier@co.mchenry.il.us
gmhoffman@co.mchenry.il.us

*Attorney forDefendants City of Chicago, Eddie Johnson, Christopher Kennedy, Alfred Nagode*
Tara D. Kennedy
tara.kennedy@cityofchicago.org

_____ s/ Jana L. Brady _____
Jana L. Brady