IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILMER CATALAN-RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  17-cv-3258 |
| | ) | |
| RICARDO WONG, Field Office Director, | ) | |
| Chicago, U.S. Immigration and Customs | ) | |
| Enforcement ("ICE"); ICE AGENT JOHN | ) | Judge Joan H. Lefkow |
| DOES 1-6; MCHENRY COUNTY, | ) | |
| MCHENRY COUNTY SHERIFF BILL PRIM, | ) | |
| CHIEF OF CORRECTIONS DAVID | ) | Magistrate Judge Jeffrey Cole |
| DEVANE, CORRECT CARE SOLUTIONS, | ) | |
| HEALTH ADMINISTRATOR MIKE | ) | |
| KEEGAN, SUPERINTENDENT EDDIE | ) | |
| JOHNSON, COMMANDER CHRISTOPHER | ) | |
| KENNEDY, COMMANDER ALFRED | ) | |
| NAGODE, CHICAGO POLICE OFFICER | ) | |
| JOHN DOES 1-2, and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MCHENRY COUNTY DEFENDANTS' ANSWER AND
## AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT

Defendants McHenry County, McHenry County Sheriff Bill Prim and Chief

David Devane, by their attorneys Patrick D. Kenneally, McHenry County State's

Attorney, and his Assistant State's Attorneys, George M. Hoffman, Michelle J.

Courier and Jana Blake Dickson, for their Answer to the plaintiff's First Amended

Complaint states as follows:

## INTRODUCTION

**COMPLAINT:**

1.        This action is brought pursuant to 42 U.S.C. § 1983 and the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to redress the deprivation under color of law of Mr. Catalan-Ramirez's rights as secured by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

**ANSWER:**

Defendants admit that plaintiff purports to bring this action pursuant to 432

U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971), but deny that any of plaintiff's rights under the

First, Fourth, Fifth and Fourteenth amendments have been violated by these

defendants.

**COMPLAINT:**

2.        Mr. Catalan-Ramirez, devoted partner and the father of young U.S. citizen children, was the primary breadwinner for his family as a mechanic in a body shop. He resided with his children and their mother in the Back of the Yards neighborhood in Chicago.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 2 and therefore deny them.

**COMPLAINT:**

3.        On January 15, 2017, as Mr. Catalan-Ramirez was leaving a restaurant in the Back of the Yards neighborhood, he was the victim of a drive-by shooting. He sustained multiple gunshot wounds that fractured his right skull and right shoulder, a traumatic brain injury, and partial paralysis on his left side. These injuries all require medical attention and rehabilitative services. As a result of these injuries, Mr. Catalan-Ramirez requires a left-side ankle brace and proper sneaker footwear to safely walk. He also requires

multiple medications daily and physical therapy three times a week. Because he does not have use of his left arm, Mr. Catalan-Ramirez cannot feed, bathe, or dress himself properly without assistance. As a result of his traumatic brain injury, Mr. Catalan-Ramirez also lives with cognitive deficits.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first, second, third and seventh sentences of paragraph 3. Defendants admit that plaintiff requires a left ankle brace, that he has been prescribed certain medications and occupational and physical therapy. Defendants deny the remaining allegations of paragraph 3.

**COMPLAINT:**

4.      On March 27, 2017, six unidentified ICE agents forced entry into Mr. Catalan-Ramirez's home without a warrant or consent. During this illegal raid, several ICE agents slammed Mr. Catalan-Ramirez on the ground and fractured his left shoulder, despite his pleas of pain and repeated notifications of his shooting-related injuries. The agents' use of force against Mr. Catalan-Ramirez was wholly unnecessary and disproportionate as Mr. Catalan-Ramirez did not resist in any way when the agents arrested him.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 4 and therefore deny them.

**COMPLAINT:**

5.      As a result of the agents' actions, Mr. Catalan-Ramirez sustained several injuries and continues to experience a deep sense of pain, humiliation, and fear.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 5 and therefore deny them.

**COMPLAINT:**

6.      Upon information and belief, ICE conducted this raid based on false information obtained from the Chicago Police Department's Gang Database and/or another mechanism for tracking suspected gang members indicating that Mr. Catalan-Ramirez was a member of a Chicago street gang. Mr. Catalan-Ramirez is not, nor has he ever been a member of a Chicago street gang.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 6 and therefore deny them.

**COMPLAINT:**

7.      After the raid, ICE took Mr. Catalan-Ramirez to McHenry County Adult Correctional Facility ("McHenry County Jail"), where he is currently detained. The McHenry County Jail has a contract with ICE to hold immigration detainees pending the resolution of their removal cases. While at McHenry County Jail, Mr. Catalan-Ramirez is being denied necessary medical care for the injuries he sustained during the January 2017 shooting and the additional injuries sustained as a result of the ICE agents' actions. As a result, Mr. Catalan-Ramirez is experiencing a number of medical issues including but not limited to extreme pain in his left shoulder and arm, losing sight in his left eye, and losing range of motion on the left side of his body. Mr. Catalan-Ramirez spends most of the day isolated in his cell due to pain and his inability to safely walk without his left-side ankle brace and proper sneaker footwear.

**ANSWER:**

Defendants admit that plaintiff is currently detained in the McHenry County

Jail. Defendants are without information or knowledge sufficient to form a belief as

to the truth or falsity of the remaining allegations contained in the first sentence of

paragraph 7. Defendants admit the allegations contained in the second sentence of

paragraph 7. Defendants deny the remaining allegations of paragraph 7.

## JURISDICTION AND VENUE

**COMPLAINT:**

8.        This Court has jurisdiction pursuant to 28 U.S.C. §§ [sic] 1331.

**ANSWER:**

Defendants admit the allegations of paragraph 8.

**COMPLAINT:**

9.        Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

**ANSWER:**

Defendants admit the allegations of paragraph 9.

## PARTIES

### Plaintiff

**COMPLAINT:**

10.        Plaintiff Mr. Catalan-Ramirez is an immigrant of Latin American descent and resident of Chicago, Illinois. Mr. Catalan-Ramirez has been detained by ICE at the McHenry County Jail in Woodstock, Illinois since March 27, 2017. Under the Americans with Disabilities Act, Mr. Catalan-Ramirez qualifies as a person with a serious disability.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in the first sentence of

paragraph 10. Defendants admit the allegations contained in the second sentence of

paragraph 10. Defendants deny the remaining allegations of paragraph 10.

5

## Defendants

### ICE Defendants

**COMPLAINT:**

11.      Defendant Ricardo Wong was at all times mentioned herein the Field Office Director of the Chicago ICE Field Office. At all times relevant to the events at issue in this case, Defendant Wong was acting under color of authority of the Department of Homeland Security. Defendant Wong overseas the Chicago ICE Field Office's functions and operations and the immigration detainees within its jurisdiction. Upon information and belief, Defendant Wong was the final policy-making authority for the raid of Mr. Catalan-Ramirez's home and is legally responsible for the violations against Mr. Catalan-Ramirez as alleged herein. Defendant Wong is also responsible for the transportation and oversight of immigration detainees in McHenry County Jail. He is sued in his individual and official capacity.

**ANSWER:**

     Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 11.

**COMPLAINT:**

12.      Defendants ICE Agent John Does 1-6 are officials of the U.S. Immigration and Customs Enforcement. At all times relevant to the events at issue in this case, Defendants ICE agents were acting under color of authority of the Department of Homeland Security. On information and belief, these ICE agents were onsite at Mr. Catalan-Ramirez's home and were personally involved in the violations against Mr. Catalan-Ramirez. They are sued in their individual capacities.

**ANSWER:**

     Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 12 and therefore deny them.

## McHenry County Defendants

**COMPLAINT:**

13.     Defendant Bill Prim is the Sheriff of McHenry County. At all times
relevant to the events at issue in this case, Defendant Prim was employed by
the McHenry County Sheriff's Department in the capacity of Sheriff. As such,
he was acting under color of law. At all times relevant to the events at issue
in this case, Defendant Prim promulgated rules, regulations, policies, and
procedures as Sheriff of McHenry County for the provision of certain health
care by medical personnel and correctional officers to detainees at the
McHenry Jail. He is sued here in his official capacity.

**ANSWER:**

Defendants admit the allegations of paragraph 13.

**COMPLAINT:**

14.     Defendant David Devane is the Chief of Corrections at McHenry
County Jail. At all times relevant to the events as issue in this case,
Defendant Devane was employed by the McHenry County Sheriff's
Department. As such, he was acting under color of law. At all times relevant
to the events at issue in this case, Defendant Devane was responsible for
implementing the policies and procedures promulgated by Defendant Prim,
supervising all staff, and managing all aspects of Jail operations. He is sued
here in his official capacity.

**ANSWER:**

Defendants admit the allegations of paragraph 14, except that they deny that

David Devane's title is Chief of Corrections. Further answering, defendants state

that Mr. Devane is Chief Administrative Officer of the McHenry County Jail.

**COMPLAINT:**

15.     Defendant McHenry County is a county of the State of Illinois. It
overseas the McHenry County Sheriff's Department, which, in turn, operates
the McHenry County Jail.

**ANSWER:**

Defendants admit that McHenry County is a county of the State of Illinois

and deny the remaining allegations of paragraph 15.

### Correct Care Solutions Defendants

**COMPLAINT:**

16.    Defendant Correct Care Solutions ("CCS") is a corporation
headquartered in Nashville, Tennessee transacting business in Illinois. CCS,
pursuant to a contract with McHenry County, provides medical and mental
health evaluation, care, and treatment to detainees at McHenry County Jail.
At all times relevant to the events at issue in this case, CCS was responsible
for the implementation, oversight, and supervision of policies and practices at
McHenry County Jail related to the provision of medical and mental health
care. As an agent of McHenry County, CCS was at all times relevant to the
events at issue in this case acting under color of law by and through its
lawful agents, including the doctor and nurses who work at the Jail.

**ANSWER:**

Defendants deny the allegations of paragraph 16. Further answering, on

information and belief, Correct Care Solutions ("CCS) is a Kansas limited liability

corporation, with its headquarters in Nashville, Tennessee. Defendants admit that

CCS entered into an agreement with McHenry County to provide certain services at

the McHenry County Jail, and that CCS's obligations and responsibilities are set

forth in that agreement, which speaks for itself.

**COMPLAINT:**

17.    Defendant Mike Keegan is the Health Administrator at McHenry
County Jail and was employed by CCS during the relevant period. At all
times relevant to the events at issue in this case, Defendant Keegan was
acting under color of law and within the scope of his employment with CCS.
Defendant Keegan was and is responsible for the medical care, treatment,
and welfare of Mr. Catalan-Ramirez while he is detained at the Jail, and he

8

has failed in that responsibility. Defendant Keegan is sued here in his official capacity.

**ANSWER:**

Defendants admit that Michael Keegan is employed by CCS to serve as Health Services Administrator at the McHenry County Jail and that he is being sued in his official capacity. Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 17 and therefore deny them.

## CPD Defendants

**COMPLAINT:**

18.     Defendant Eddie Johnson is the Superintendent of the Chicago Police Department. At all times relevant to the events at issue in this case, Defendant Johnson was employed by the Chicago Police Department. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Johnson promulgated rules, regulations, policies, and procedures at the Chicago Police Department. Defendant Johnson is responsible for supervising all CPD officers and managing all operations at the CPD. He is sued here in his official capacity.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18 and therefore deny them.

**COMPLAINT:**

19.     Defendant Christopher J. Kennedy is the Commander of the Gang Investigations Division and Defendant Alfred Nagode is the Deputy Chief of the Gang Enforcement Division. At all times relevant to the events at issue in this case, Defendants Kennedy and Nagode were employed by the Chicago Police Department. As such, they were acting under color of law. At all times relevant to the events at issue in this case, Defendants Kennedy and Nagode were in charge of maintaining and updating the CPD's Gang Database. They are sued here in their official and individual capacities.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 19 and therefore deny them.

**COMPLAINT:**

20.　　　Defendant CPD Officer John Does 1-2 were employees of the Chicago
Police Department during the relevant time period. At all times relevant to
the events at issue in this case, these defendants were acting under color of
law and within the scope of their employment with the Chicago Police
Department. These defendants wrongfully labeled Mr. Catalan-Ramirez as a
Chicago street gang member and included him in CPD's Gang Database.
These defendants are sued in their individual capacities.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 18 and therefore deny them.

**COMPLAINT:**

21.　　　Defendant City of Chicago is and all times mentioned herein was a
municipality organized and operating under the statutes of the State of
Illinois.

**ANSWER:**

Defendants admit the allegations of paragraph 21.

## FACTUAL ALLEGATIONS

### The Raid

**COMPLAINT:**

22.　　　On the morning of March 27, 2017, two ICE agents approached Celene
Adame, Mr. Catalan-Ramirez's partner, outside her front yard. The ICE
agents did not identify themselves to Ms. Adame. They were wearing bullet
proof vests with "police" written on the vests. They presented a picture to Ms.
Adame and asked whether she recognized the person in the picture.

Assuming that they were local police, Ms. Adame replied that she did not recognize the person in the picture. The men then asked her where she was going and she explained that she was going to drop off her children at the school across the street.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 and therefore deny them.

**COMPLAINT:**

23.     When Ms. Adame returned home, the same two men were inside her walled yard and on the exterior stairs approaching her residence on the third floor of the apartment building. The men asked her again if she recognized the person in the picture, and she again replied that she did not. The men then asked if they could speak with her husband, and she explained that they could not because he was sleeping. She politely asked the men to leave.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 23 and therefore deny them.

**COMPLAINT:**

24.     Ms. Adame then heard her three-year-old son crying inside the apartment and yelling "mama", so she opened the door to let herself in. When she opened the door, she saw that two different ICE agents were already inside the apartment. Ms. Adame believes that these men entered her apartment through the kitchen door in the back, which she left unlocked.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 24 and therefore deny them.

**COMPLAINT:**

25.     When she was standing by the door, Ms. Adame also noticed that there were two additional ICE agents outside going up to the attic. The attic is part

of the building, next to the porch, and can be reached by climbing up some steps.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 25 and therefore deny them.

**COMPLAINT:**

26.     When Ms. Adame opened the door and saw the two agents already *inside her apartment, she turned toward the two agents standing beside her* and asked them, "What are you doing here? Can you please leave?" The agents ignored her and went inside the apartment. The agents did not ask for permission before entering the apartment. Ms. Adame did not give them permission to enter, nor did other resident of the home. The ICE agents also did not present Ms. Adame a warrant to enter her apartment.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 26 and therefore deny them.

**COMPLAINT:**

27.     When she entered the apartment, the two agents who were already inside had flashlights and were going room by room-they checked the bathroom, the children's bedroom, and Ms. Adame's and Mr. Catalan-Ramirez bedroom.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 27 and therefore deny them.

**COMPLAINT:**

28.     Once of the ICE agents who is Latino asked Ms. Adame, "Where are the guns and drugs?" Ms. Adame replied, "What guns or drugs?" She repeatedly told him that the man they were looking for is not her husband, and that they were looking for a different person.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 28 and therefore deny them.

**COMPLAINT:**

29.     Mr. Catalan-Ramirez was asleep in his bedroom. ICE agents went to the bedroom and tried to wake up Mr. Catalan-Ramirez. Ms. Adame also approached the bedroom. The ICE agents flashed their flashlight on Mr. Catalan-Ramirez's face and pulled the covers off him. Mr. Catalan-Ramirez woke up and stood up with one leg and slowly hobbled out to the living room because he was unable to walk properly without his brace and sneakers.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 29 and therefore deny them.

**COMPLAINT:**

30.     The ICE agents asked for Mr. Catalan-Ramirez's and Ms. Adame's identification. Assuming they were police because the ICE agents never identified themselves, Ms. Adame provided the men with Mr. Catalan-Ramirez's birth certificate and copy of his passport.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 30 and therefore deny them.

**COMPLAINT:**

31.     Ms. Adame repeatedly asked the ICE agents if they had a warrant. She also asked the agents who they were and why they were here. The ICE agents never answered. Upon information and belief, the ICE agents did not have a warrant that permitted them to enter or search Mr. Catalan-Ramirez's home or to detain him without voluntary consent or exigent circumstances.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 31 and therefore deny them.

**COMPLAINT:**

32.     At some point, while they were questioning Mr. Catalan-Ramirez, the
ICE agents began to surround Mr. Catalan-Ramirez.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 32 and therefore deny them.

**COMPLAINT:**

33.     Fearing an arrest, Mr. Catalan-Ramirez told the agents in English
that he is sick and that he is paralyzed on his left side. He politely asked that
if they were going to arrest him, to please handcuff him in the front.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 33 and therefore deny them.

**COMPLAINT:**

34.     One of the agents took Mr. Catalan-Ramirez's right hand and put his
arm behind his back. Another agent took Mr. Catalan-Ramirez's left hand
and tried to put his arm behind his back, but because his left arm is partially
paralyzed, the arm was harder to maneuver. At that point, the ICE agents
slammed Mr. Catalan-Ramirez to the floor. Three agents pinned him to the
ground. One of the agents kneed him in the back. Mr. Catalan-Ramirez again
asked that his hands be handcuffed in the front rather than the back because
of his injuries. Ignoring his pleas, and agent twisted Mr. Catalan-Ramirez's
arm and handcuffed him tightly from the back. Mr. Catalan-Ramirez begged
the agents to stop, yelling "mi brazo", "quebra mi brazo" (you are breaking my
arm). The agents also slammed his head on the floor, causing him immediate
pain due to his prior skull fracture and traumatic brain injury. Crying, Mr.

14

Catalan-Ramirez tried to tell the agents about the pain in both his head and shoulder, but they did not appear to believe him.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 34 and therefore deny them.

**COMPLAINT:**

35.     While the three agents were aggressively arresting Mr. Catalan-Ramirez, another three agents or so grabbed Ms. Adame, threw her on the sofa, and attempted to forcibly hold her on the sofa. While she was witnessing the agents' brutal attack on her husband, Ms. Adame explained to the agents in Spanish that Mr. Catalan-Ramirez had been a victim of a crime and that half of his body was paralyzed. At least one of the ICE agents spoke Spanish and clearly understood what she was saying.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 35 and therefore deny them.

**COMPLAINT:**

36.     When Mr. Catalan-Ramirez was on the ground being handcuffed, he yelled out to Ms. Adame to film. Ms. Adame eventually retrieved her phone from the kitchen and began taping the arrest. The ICE agents ordered her to stop taping and tried to take her phone away, but she told them no and continued taping. After she began taping, the agents stopped questioning Mr. Catalan-Ramirez.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 36 and therefore deny them.

**COMPLAINT:**

37.     Mr. Catalan-Ramirez's and Ms. Adame's three-year-old son witnessed the ICE agents' arrest of his father. He was crying, screaming, and appeared

frightened. The ICE agents yelled at him to go to his room, but he stayed in the living room with his parents. He repeatedly asked the ICE agents to let his father go. Their son continues to have nightmares regarding the ICE raid and the arrest of his father in which he wakes up at night frightened and screaming for his father.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 37 and therefore deny them.

**COMPLAINT:**

38.     As a result of the home raid and the ICE agents' brutality, both Ms. Adame and her three-year-old son have suffered trauma and emotional distress. Both are now fearful of police and experience constant anxiety.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 38 and therefore deny them.

**COMPLAINT:**

39.     After the ICE agents arrested Mr. Catalan-Ramirez, they grabbed him from behind and partly carried him away to their car. Mr. Catalan-Ramirez could not walk properly without the use of his ankle brace, and so two agents had to lift him by his arms, causing him further pain in his left shoulder. The agents would not let him bring his ankle brace. The agents also would not let Mr. Catalan-Ramirez bring all of his necessary medications. Mr. Catalan-Ramirez was taken out of the apartment wearing nothing but sandals, shorts, and a T-shirt.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 39 and therefore deny them.

**COMPLAINT:**

40.     At no time before placing Mr. Catalan-Ramirez under arrest did the

ICE agents ask Mr. Catalan-Ramirez about his legal right to be in the United States, nor did Mr. Catalan-Ramirez tell the agents anything about his immigration status.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 18 and therefore deny them.

**COMPLAINT:**

41.    After the ICE agents placed Mr. Catalan-Ramirez in their car, he continued to cry from all the pain he was experiencing. The ICE agents then drove Mr. Catalan-Ramirez to the emergency room at Loyola Hospital. The doctor at Loyola Hospital diagnosed Mr. Catalan-Ramirez with a fractured left shoulder and recommended that he see an orthopedic specialist immediately to get treatment.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 41 and therefore deny them.

**COMPLAINT:**

42.    After the hospital, the ICE agents drove Mr. Catalan-Ramirez to the ICE field office for processing. While there, one ICE agent asked Mr. Catalan-Ramirez if he was associated with any gangs. Mr. Catalan-Ramirez replied "no." Mr. Catalan-Ramirez is not and has never been a member of any Chicago street gang.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 42 and therefore deny them.

### ICE Targeted Mr. Catalan-Ramirez Because It Received False Information from the Chicago Police Department

**COMPLAINT:**

43.     The Chicago Police Department maintains a Gang Database of all suspected gang members in the City of Chicago. This Gang Database is arbitrary, over-inclusive, and contains false information. Many people are included in the Gang Database who are not in fact members of any street gangs. Upon information and belief, the Chicago Police Department also uses a number of other similarly arbitrary, over-inclusive mechanisms to track and report on people who are suspected of gang membership. These other mechanisms are also riddled with false information.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 43 and therefore deny them.

**COMPLAINT:**

44.     Upon information and belief, the Chicago Police Department at some point in 2014 or 2015 falsely labeled Mr. Catalan-Ramirez as a gang member and included him in its Gang Database and/or another mechanism for tracking suspected gang members.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 44 and therefore deny them.

**COMPLAINT:**

45.     CPD never confronted Mr. Catalan-Ramirez with any evidence that he was gang-affiliated before including him in the Gang Database and/or another mechanism for tracking suspected gang members, and never informed him of his inclusion in the Gang Database and/or another mechanism for tracking suspected gang members. Mr. Catalan-Ramirez also never had the opportunity to challenge his inclusion in the Gang Database and/or another mechanism for tracking suspected gang members.

18

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 45 and therefore deny them.

**COMPLAINT:**

46.     An ICE deportation officer, Officer "Pols," confirmed that ICE received
information that Mr. Catalan-Ramirez was affiliated with a Chicago street
gang from the Chicago Police Department and that ICE targeted Mr.
Catalan-Ramirez as part of its gang operations.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 46 and therefore deny them.

**COMPLAINT:**

47.     Upon information and belief, in the past recent months, ICE has
conducted a number of raids in primarily Latino neighborhoods in Chicago as
part of its "gang op." ICE agents have arrested a number of individuals
during these raids who they perceived to be gang members due to false
information they received from the Chicago Police Department.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 47 and therefore deny them.

**COMPLAINT:**

48.     On the same day that Mr. Catalan-Ramirez was arrested by ICE, ICE
raided another home and attempted to arrest a young man who is a U.S.
citizen, and ended up shooting his father in the process. ICE indicated on
Twitter that this raid was a part of "a gang op." The young man is not a gang
member.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 48 and therefore deny them.

**COMPLAINT:**

49.     Upon information and belief, ICE is receiving false information that individuals are gang members from the Chicago Police Department's Gang Database.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 49 and therefore deny them.

**COMPLAINT:**

50.     The City of Chicago is a "sanctuary city." The Welcoming City Ordinance, which was first passed by City Council in 2012 and most recently amended in 2016, provides certain protections to undocumented immigrants. Among those protections, the Chicago Police Department cannot share information regarding an individual's immigration status with federal authorities unless required to do so by federal law. However, the Welcoming City Ordinance does not prohibit the Chicago Police Department from sharing other information about an individual with ICE, such as all the identifying information about individuals contained in CPD's Gang Database.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 50 and therefore deny them.

**COMPLAINT:**

51.     The City of Chicago is therefore not a sanctuary city for those individuals like Mr. Catalan-Ramirez who have been falsely labeled by CPD as a gang member and then subsequently targeted by ICE because CPD shared this false information.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 51 and therefore deny them.

**COMPLAINT:**

52.     Upon information and belief, gang databases disproportionately identify African American and Latino men as gang members. "Research *indicates that law enforcement gang task forces often label large numbers of youth of color as gang members with little or no evidence of gang involvement. This racism is further increased by a complete refusal to recognize and address primarily white gangs.*" Lillian Dowdell Drakeford, *The Race Controversy in American Education* (2015), at 160. Examples of this racial bias are seen in: the Los Angeles County gang database, where approximately half of all African American men between the ages of 16 and 24 are listed as gang members or associates, *id*; the Denver Police Department gang database, where 2 out of every 3 African American males in Denver were listed as a gang member and 1 out of every 4 Latinos, Julie Barrows & C. Ronald Huff, *Gang & Public Policy: Constructing and Deconstructing Gang Databases,* 8 CRIMINOLOGY & PUB. POL'Y 675, 683 (2009); and the Minnesota gang database, which is 44 percent African American and 36 percent white, K. Babe Howell, *Fear Itself; The Impact of Allegations of Gang Affiliation on Pre-trial Detention,* 23 ST. THOMAS L. REV. (2011). "The vague criteria, secrecy of the process, and lack of judicial review create a danger that police officers add many young, minority males to the database simply because they wear hip-hop clothing and live in poverty-stricken, high-crime areas." Linda S. Beres & Thomas D. Griffith, *Demonizing Youth,* 34 LOY. L.A. L. REV. 747,761 (2001).

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 52 and therefore deny them.

**COMPLAINT:**

53.     City of Chicago officials know that the Gang Database is rife with inaccuracies and that many individuals included in the database have no gang affiliation. City of Chicago officials know that when this false information is provided to ICE it will be used against individuals in removal proceedings and that individuals have no recourse to challenge their inclusion in the database.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 53 and therefore deny them.

## Deficient Medical Care at McHenry County Jail

**COMPLAINT:**

54.     Mr. Catalan-Ramirez was transported to McHenry County Jail on March 27, 2017.

**ANSWER:**

Defendants admit the allegations of paragraph 54.

**COMPLAINT:**

55.     Mr. Catalan-Ramirez is experiencing significant pain in his left shoulder as a result of the fracture he sustained during his arrest by the ICE agents. He has been seen once by an orthopedic doctor at Mercy Woodstock Medical Center, and he is still waiting on a follow up appointment to receive treatment. The delay in treatment of his shoulder could cause worsening and perhaps permanent injury.

**ANSWER:**

Defendants admit that plaintiff has received medical care and treatment for

injuries he sustained prior to his detention in the McHenry County Jail, but deny

that plaintiff has received deficient medical care while detained in the McHenry

County Jail and deny the remaining allegations of paragraph 55.

**COMPLAINT:**

56.     When ICE agents slammed Mr. Catalan-Ramirez's head on the ground during the arrest, they further exacerbated his traumatic brain injury. As a result, Mr. Catalan-Ramirez is now losing sight in his left eye and is experiencing numbness on the left side of his face. After repeated requests for medical treatment by Mr. Catalan-Ramirez and his counsel, the medical staff at the McHenry County Jail finally referred Mr. Catalan-Ramirez to a neurologist on April 20, 2017, however, that appointment still has not occurred to this date.

**ANSWER:**

Defendants are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in the first two sentences of paragraph 56 and therefore deny them. Defendants admit that plaintiff has received medical care and treatment for injuries he sustained prior to his detention in the McHenry County Jail. Defendants deny the remaining allegations of paragraph 56.

**COMPLAINT:**

57.     Prior to Mr. Catalan-Ramirez's arrest, he was receiving out-patient therapy three times a week. The therapy was helping him gain motion back in his left arm, hand, leg, and foot. Mr. Catalan-Ramirez' rehabilitation was progressing and he was beginning to slowly walk again in the days before he was arrested.

**ANSWER:**

Defendants admit that plaintiff has been able to walk since his detention in the McHenry County Jail and deny the remaining allegations of paragraph 57.

**COMPLAINT:**

58.     Since being detained at McHenry County Jail, Mr. Catalan-Ramirez has been unable to obtain the necessary physical therapy and as a result, he is losing range of motion on his left side and regressing in his rehabilitation. His left arm is now completely unmovable.

**ANSWER:**

Defendants deny the allegations of paragraph 58.

**COMPLAINT:**

59.     After repeated requests for medical treatment by Mr. Catalan-Ramirez and his counsel, the medical staff at the McHenry County Jail finally referred Mr. Catalan-Ramirez to and occupational and physical therapist on April 20,

2017, however, Mr. Catalan-Ramirez still has not received these appointments to this date. Mr. Catalan-Ramirez faces serious risk of permanent damage because of this over month-long interruption in rehabilitation services. If Mr. Catalan-Ramirez does not receive the necessary rehabilitative services immediately, he could become permanently physically disabled.

**ANSWER:**

Defendants admit that plaintiff was referred for occupational and physical

therapy while detained in the McHenry County Jail and deny the remaining

allegations of paragraph 59.

**COMPLAINT:**

60.     Ms. Adame was able to provide Mr. Catalan-Ramirez his ankle brace after he was placed in custody. However, after about two weeks at the Jail, the binding strap on Mr. Catalan-Ramirez's ankle brace broke, leaving him unable to use the brace and walk safely within the Jail. Medical staff at the Jail have refused Mr. Catalan-Ramirez's request to replace his brace. Additionally, Mr. Catalan-Ramirez is unable to wear the proper sneaker footwear in the Jail in order to wear his leg brace. He has requested to receive the proper sneaker footwear, but security and medical staff have refused his request. Without the proper sneaker footwear and brace, Mr. Catalan-Ramirez risks serious injury, particularly because of his existing brain injury. Because Mr. Catalan-Ramirez cannot walk safely around the Jail, he spends most of his days in his cell.

**ANSWER:**

Defendants admit that a strap on plaintiff's ankle brace broke while he was

in the McHenry County Jail and deny the remaining allegations of paragraph 60.

**COMPLAINT:**

61.     Mr. Catalan-Ramirez requires a number of medications to deal with the pain from all his injuries and medication to help treat his paralysis. The medical staff at McHenry County Jail have recently stopped giving Mr. Catalan-Ramirez his medication that helps treat his paralysis.

**ANSWER:**

Defendants admit that plaintiff receives a variety of prescribed medications

at the McHenry County Jail and deny the remaining allegations of paragraph 61.

**COMPLAINT:**

62.     On or around April 12, 2017, the doctor at the Jail, Dr. Young Kim, interrogated Mr. Catalan-Ramirez about his medical requests and communication with counsel. Dr. Kim accused Mr. Catalan-Ramirez of misrepresenting his injuries and medical needs. Mr. Catalan-Ramirez felt that the intended goal of the meeting was to intimidate him and convince him that he did not have urgent and unresolved medical needs.

**ANSWER:**

Defendants deny the allegations of paragraph 62.

**COMPLAINT:**

63.     Due to his injuries, Mr. Catalan-Ramirez cannot dress, feed, or bathe himself properly without assistance. Before he was arrested, Mr. Catalan-Ramirez relied on Ms. Adame to help him with all his daily needs. Furthermore, his left arm is in a sling due to his fractured shoulder and he has lost all motion in his left arm and hand due to the interruption in his physical therapy. He has repeatedly requested assistance from correctional officers and nurses, but they refuse to help him. When Mr. Catalan-Ramirez attempts to dress, feed and bathe himself without the assistance of others, he experiences significant pain.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in the second sentence of

paragraph 63 and therefore deny them. Defendants deny the remaining allegations

of paragraph 63.

**COMPLAINT:**

64.     Mr. Catalan-Ramirez has gone days without showering because it is

very difficult and painful for him to bathe himself. Mr. Catalan-Ramirez also has gone days without changing his clothes because he relies on other detainees to help him put on his pants and shirt. He also relies on other detainees to help him prepare and eat his food.

**ANSWER:**

Defendants deny the allegations of paragraph 64.

**COMPLAINT:**

65.     Mr. Catalan-Ramirez has been reprimanded by correctional officers for enlisting other detainees' help in dressing, eating, and putting on his ankle brace. When one correctional officer saw Mr. Catalan-Ramirez receiving help from another detainee, the officer threatened to place Mr. Catalan-Ramirez and any person assisting him in segregation as punishment if they continued to help him. Because of the officer's threats, some detainees are now afraid to help Mr. Catalan-Ramirez. Without the assistance of detainees or staff, Mr. Catalan-Ramirez continues to struggle meeting his basic needs.

**ANSWER:**

Defendants deny the allegations of paragraph 65.

**COMPLAINT:**

66.     The correctional officers also bully and harass Mr. Catalan-Ramirez because of his disabilities. Officers have taunted him, made fun of him, and used slurs against him, including calling him gay when he has asked for assistance in dressing.

**ANSWER:**

Defendants deny the allegations of paragraph 66.

**COMPLAINT:**

67.     Due to the extreme pain Mr. Catalan-Ramirez is experiencing throughout his body, he cannot sleep at night. The pain is worsening each day.

**ANSWER:**

Defendants deny the allegations of paragraph 67.

**COMPLAINT:**

68.     As a result of his arrest by ICE agents, and his detention at McHenry County Jail, Mr. Catalan-Ramirez suffered and continues to suffer extreme distress. He is exhibiting symptoms of depression, including insomnia, depressed mood, fatigue, crying episodes, and diminished concentration. He feels humiliated and dehumanized by the staff at the Jail. He is extremely stressed and does not feel like he can last much longer at the Jail.

**ANSWER:**

Defendants deny the allegations of paragraph 68 with respect to the time

period he has been detained in the McHenry County Jail. Defendants are without

knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations of paragraph 68 with respect to his arrest and therefore deny them.

**Mr. Catalan-Ramirez is Forced to Wear Shackles During Transport**

**COMPLAINT:**

69.     Mr. Catalan-Ramirez has been transported out of McHenry County Jail on a number of occasions to attend immigration court hearings and to go to the hospital.  Each time he is transported, his hands and legs are shackled.

**ANSWER:**

Defendants deny the allegations of paragraph 69.

**COMPLAINT:**

70.     It is the policy and practice at McHenry County Jail to handcuff and shackle all detainees during transport for security purposes.

**ANSWER:**

Defendants admit that, as a general rule, detainees are handcuffed and

shackled during transport for both security and safety purposes. Defendants deny

27

the remaining allegations of paragraph 70.

**COMPLAINT:**

71.    The shackles make it even more difficult for Mr. Catalan-Ramirez to walk. The shackles cause Mr. Catalan-Ramirez extreme pain due to many injuries, embarrassment, humiliation, and mental and emotional distress. Mr. Catalan-Ramirez feels like he is being unfairly treated like an animal and a criminal. He feels that being forced to wear shackles falsely portrays him as a dangerous person.

**ANSWER:**

Defendants deny the allegations of paragraph 71.

**COMPLAINT:**

72.    Mr. Catalan-Ramirez has no history of violence or disruption in custody or in court and would pose no threat to the safety of others or threat of flight if allowed to be transported without physical restraints.

**ANSWER:**

Defendants deny the allegations of paragraph 72.

**COMPLAINT:**

73.    The transport vans at the McHenry County Jail are not equipped with seatbelts. When Mr. Catalan-Ramirez is transported, he is not provided with a seatbelt. Mr. Catalan-Ramirez's safety is thus at risk each time he is transported out of McHenry County Jail.

**ANSWER:**

Defendants admit the allegations contained in the first two sentences of

paragraph 73 and deny the remaining allegations of paragraph 73.

### Mr. Catalan-Ramirez's Damages

74.    Mr. Catalan-Ramirez experienced a traumatic and violent arrest at the hands of unidentified ICE agents precipitated by false information gathered from the CPD's Gang Database and/or another mechanism for tracking suspected gang members. As a result, Mr. Catalan-Ramirez- apart from the

emotional pain and humiliation he endured- sustained, among other things, a
fractured shoulder, loss of eyesight, and additional paralysis on his left side.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations of paragraph 74 and therefore deny them.

**COMPLAINT:**

75.    Mr. Catalan-Ramirez continues to experience pain and injury as a
result of the harm inflicted on him by ICE agents and fails to receive
appropriate medical care in McHenry County Jail.

**ANSWER:**

Defendants deny that plaintiff does not receive appropriate medical care in

the McHenry County Jail. Defendants are without knowledge or information

sufficient to form a belief as to the truth or falsity of the allegations of paragraph 75

and therefore deny them.

**COMPLAINT:**

76.    As a result of the foregoing, Mr. Catalan-Ramirez has suffered and
continues to suffer tremendous damages, including but not limited to
physical harm, mental suffering, and loss of a normal life, all directly and
proximately caused by the Defendant's actions.

**ANSWER:**

Defendants deny the allegations of paragraph 71.

## COUNT 1 – UNLAWFUL ENTRY AND UNREASONABLE SEIZURE
### (Fourth Amendment Claim for Damages under *Bivens* Against Defendants Wong and ICE Agent John Does 1-6)

Defendants make no answer to the allegations of Count I as they are not

directed to nor do they seek relief from these Defendants. To the extent an answer

to the allegations of Count I is required by these defendants, they deny them.

## COUNT II – EXCESSIVE FORCE
### (Fourth Amendment Claim for Damages under *Bivens* Against Defendants ICE Agent John Does 1-3)

Defendants make no answer to the allegations of Count II as they are not

directed to nor do they seek relief from these Defendants. To the extent an answer

to the allegations of Count II is required by these defendants, they deny them.

## COUNT III – FAILURE TO PROVIDE MEDICAL CARE
### (Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 Against Defendants Prim, Devane, Keegan, and CCS)

**COMPLAINT:**

87.     Mr. Catalan-Ramirez repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER:**

Defendants repeat and re-allege their answers to the preceding paragraphs

as their answer to paragraph 87.

**COMPLAINT:**

88.     Count III is alleged against Defendant Sheriff Prim in his official capacity, Defendant David Devane in his official capacity, Defendant Mike Keegan in his official capacity, and Defendant Correct Care Solutions.

**ANSWER:**

Defendants admit the allegations of paragraph 88.

**COMPLAINT:**

89.     Mr. Catalan-Ramirez was deprived and continues to be deprived of his rights under Fourteenth Amendment to be provided with adequate medical treatment and care while at the McHenry County Jail.

**ANSWER:**

Defendants deny the allegations of paragraph 89.

**COMPLAINT:**

90.     The Defendants failures to take appropriate steps to provide Mr. Catalan-Ramirez with adequate treatment for his very serious medical needs, as described more fully in the preceding paragraphs, constitute deliberate indifference to Mr. Catalan-Ramirez's serious medical needs and violate his Fourteenth Amendment rights. Defendants know of and disregard the substantial risk of injury to Mr. Catalan-Ramirez by failing to provide adequate medical care.

**ANSWER:**

Defendants deny the allegations of paragraph 90.

**COMPLAINT:**

91.     Mr. Catalan-Ramirez seeks injunctive and declaratory relief against all official capacity Defendants and Defendant CCS to prevent the continued violation of his constitutional rights.

**ANSWER:**

Defendants admit that plaintiff seeks injunctive and declaratory relief but

deny that he is entitled to any relief and further deny the remaining allegations of

paragraph 91.

### COUNT IV – AMERICANS WITH DISABILITES ACT ("ADA")
### (ADA Claim for Declaratory and Injunctive Relief Against Defendant
### Sheriff Prim in his Official Capacity)

**COMPLAINT:**

92.     Mr. Catalan-Ramirez repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER:**

Defendants repeat and re-allege their answers to the preceding paragraphs

as their answer to paragraph 92.

**COMPLAINT:**

93. Count IV is alleged against Defendant Sheriff Prim in his official capacity.

**ANSWER:**

Defendants admit the allegations of paragraph 93.

**COMPLAINT:**

94. As described more fully in the proceeding paragraphs, Mr. Catalan-Ramirez is a qualified person with a physical disability under the Americans with Disabilities Act and his disability is known to the individual Defendants- Mr. Catalan-Ramirez is partially paralyzed on the left side rendering him unable to walk without the use of a leg brace and proper footwear and unable to properly dress, feed, or bathe himself without assistance. As a result, the Defendants have an obligation to accommodate his disability by providing him with a functioning leg brace and proper footwear and assisting him in his daily activities such as dressing, eating, and showering. The Defendants intentionally have failed to accommodate Mr. Catalan-Ramirez's physical disability, and these failures have caused Mr. Catalan-Ramirez pain and suffering.

**ANSWER:**

Defendants deny the allegations of paragraph 94.

**COMPLAINT:**

95. Mr. Catalan-Ramirez seeks injunctive and declaratory relief against Defendant Sheriff Prim in his official capacity to prevent the continued violation of his rights under the ADA.

**ANSWER:**

Defendants admit that plaintiff seeks injunctive and declaratory relief but

deny that he is entitled to any relief and further deny the remaining allegations of

paragraph 95.

## COUNT V – RETALIATION
### (First and Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C § 1983 Against Defendants Prim, Devane, Keegan, and CCS)

96.     Mr. Catalan-Ramirez repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER:**

Defendants repeat and re-allege their answers to the preceding paragraphs

as their answer to paragraph 96.

**COMPLAINT:**

97.     Count V is alleged against Defendant Sheriff Prim in his official capacity, Defendant David Devane in his official capacity, Defendant Mike Keegan in his official capacity, and Defendant Correct Care Solutions.

**ANSWER:**

Defendants admit the allegations of paragraph 97.

**COMPLAINT:**

98.     Medical staff at the Jail violated Mr. Catalan-Ramirez's rights guaranteed by the First Amendment, as incorporated by the Fourteenth Amendment, when they intimidated him and accused him of misrepresenting his injuries and medical needs after he, through counsel, contacted ICE officials to request urgent medical assistance.

**ANSWER:**

Defendants deny the allegations of paragraph 98.

**COMPLAINT:**

99.     Security staff at the Jail violated and continue to violate Mr. Catalan-Ramirez's rights guaranteed by the First Amendment, as incorporated by the Fourteenth Amendment, by threatening him with placement in segregation whenever he asks for other detainees' assistance with his daily needs.

**ANSWER:**

Defendants deny the allegations of paragraph 99.

**COMPLAINT:**

100.     Mr. Catalan-Ramirez seeks injunctive and declaratory relief against these official capacity Defendants and Defendant CCS to prevent the continued violation of his constitutional rights.

**ANSWER:**

Defendants admit that plaintiff seeks injunctive and declaratory relief but

deny that he is entitled to any relief and further deny the remaining allegations of

paragraph 100.

## COUNT VI – DENIAL OF DUE PROCESS
### (Fifth and Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 Against Defendants Prim, Devane, and Wong)

**COMPLAINT:**

101.     Mr. Catalan-Ramirez repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER:**

Defendants repeat and re-allege their answers to the preceding paragraphs

as their answer to paragraph 101.

**COMPLAINT:**

102.     Count VI is alleged against Defendant Sheriff Prim in his official capacity, Defendant Devane in his official capacity, and Defendant Wong in his official capacity.

**ANSWER:**

Defendants admit the allegations of paragraph 102.

**COMPLAINT:**

103.     As a civil immigration detainee, Mr. Catalan-Ramirez has a constitutional liberty interest in being free from physical restraints such as the hard metal shackles that are currently used on his hands and legs when he is transported out of the McHenry County Jail to go to immigration court hearings and the hospital.

**ANSWER:**

Defendants deny the allegations of paragraph 103.

**COMPLAINT:**

104.     By shackling Mr. Catalan-Ramirez every time he is transported out of McHenry County Jail to go to immigration court hearings and the hospital, Defendants' are violating his rights due to process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**

Defendants deny the allegations of paragraph 104.

**COMPLAINT:**

105.     Mr. Catalan-Ramirez seeks injunctive and declaratory relief against these official capacity Defendants to prevent the continued violation of his constitutional rights.

**ANSWER:**

Defendants admit that plaintiff seeks injunctive and declaratory relief but

deny that he is entitled to any relief and further deny the remaining allegations of

paragraph 105.

**COUNT VII – DENIAL OF DUE PROCESS**
**(Fourteenth Amendment Claim for Damages under 42 U.S.C. § 1983**
**Against Defendants Superintendent Johnson, Commander Christopher**
**Kennedy, Commander Alfred Nagode, and Officer John Does 1-2)**

Defendants make no answer to the allegations of Count VII as they are not

35

directed to nor do they seek relief from these Defendants. To the extent an answer to the allegations of Count VII is required by these defendants, they deny them.

## COUNT VIII – UNLAWFUL POLICY AND PRACTICE
### (*Monell* Claim for Damages under 42 U.S.C. § 1983 Against the City of Chicago)

Defendants make no answer to the allegations of Count VIII as they are not directed to nor do they seek relief from these Defendants. To the extent an answer to the allegations of Count VIII is required by these defendants, they deny them.

## COUNT IX – ILLINOIS CIVIL RIGHTS ACT ("ICRA")

### (ICRA Claim for Damages Against Defendant City of Chicago)

Defendants make no answer to the allegations of Count IX as they are not directed to nor do they seek relief from these Defendants. To the extent an answer to the allegations of Count IX is required by these defendants, they deny them.

## COUNT X – INDEMNIFICATION

### (State Law Claim Against the City of Chicago)

Defendants make no answer to the allegations of Count X as they are not directed to nor do they seek relief from these Defendants. To the extent an answer to the allegations of Count X is required by these defendants, they deny them.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Wilmer Catalan-Ramirez requests that this Court enter judgment in his favor against Defendants in the following manner:

1. Adjudge and declare that the policies, practices, and conduct described in this Complaint are in violation of the rights of Mr. Catalan-Ramirez under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2.       Enjoin the Defendants from subjecting Mr. Catalan-Ramirez to the unlawful policies, practices, and conduct described in this Complaint.

3.       Retain jurisdiction of this case until such time as the Defendants have fully complied with all orders of the Court, and there is reasonable assurance that the Defendants will continue to comply in the future with these orders.

4.       Award Mr. Catalan-Ramirez compensatory and punitive damages.

5.       Award Mr. Catalan-Ramirez reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

6.       Award Mr. Catalan-Ramirez such other and further relief as this Court may deem appropriate and just.

## ANSWER TO PRAYER FOR RELIEF

Defendants deny that plaintiff is entitled to any relief.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's request for injunctive relief is subject to the provisions of Section 3626(a)(2) of the Prison Litigation Reform Act, 18 U.S.C. Section 3626(a)(2).

## SECOND AFFIRMATIVE DEFENSE

At all times relevant hereto, the McHenry County Jail had a grievance procedure available to plaintiff, the provisions of which were provided to plaintiff upon being booked into the Jail. Plaintiff has failed to utilize the grievance procedure, and plaintiff was detained at the jail at the time this lawsuit was filed; consequently, plaintiff failed to exhaust his administrative remedies, as mandated by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997(e)(a).

WHEREFORE, defendants McHenry County, McHenry County Sheriff Bill Prim and Chief David Devane, requests this Court to enter judgment in their favor

and against the plaintiff and for such other and further relief as the Court deems appropriate.

McHenry County, McHenry County Sheriff
Bill Prim and Chief David Devane


By: _____s/George M. Hoffman_____
              One of their Attorneys


Patrick D. Kenneally
McHenry County State's Attorney
George M. Hoffman (ARDC No. 6180738)
Michelle J. Courier (ARDC No. 6255711)
Jana Blake Dickson (ARDC No. 6305741)
Assistant State's Attorneys
McHenry County Government Center
2200 North Seminary Avenue
Woodstock, Illinois 60098
815-334-4159 (phone)
815-334-0872 (fax)
gmhoffman@co.mchenry.il.us
mjcourier@co.mchenry.il.us
jeblake@co.mchenry.il.us

## CERTIFICATE OF SERVICE

I, George M. Hoffman, hereby certify that on May 25, 2017, I caused the foregoing **McHenry County Defendants' Answer and Affirmative Defenses to First Amended Complaint** to be served upon all counsel on the attached Service List by electronic filing via the CM/ECF system.


By:   <u>s/George M. Hoffman</u>
       Assistant State's Attorney

## SERVICE LIST

Attorneys for Plaintiff

Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
sheila.bedi@law.northwestern.edu
vanessa.delvalle@law.northwestern.edu

"Julie" Yihong Mao
Sejal Zota
National Immigration Project of the National Lawyers Guild
14 Beacon Street, Suite 602
Boston, MA 02108
(617) 227 – 9727
julie@nipnlg.org
sejal@nipnlg.org

Attorneys for Ricardo Wong

Craig Arthur Oswald
Alex Harms Hartzler
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
Craig.oswald@usdoj.gov
alex.hartzler@usdoj.gov

Attorneys for CCS and Michael Keegan R.N.

Jana L. Brady
Heyl, Royster, Voelker & Allen
120 West State Street, Second Floor
P.O. Box 1288
Rockford, Illinois 61105-1288
(815) 963-4454
jbrady@heylroyster.com

Amee Lakhani
Andrew J. Roth
Heyl, Royster, Voelker & Allen
33 N. Dearborn Street. 7th Floor
Chicago, IL 60602
(312) 853-8714
alakhani@heylroyster.com
aroth@heylroyster.com

<u>Attorney for City of Chicago, Alfred Nagode, Christopher Kennedy & Eddie Johnson</u>

Tara D. Kennedy
Assistant Corporation Counsel
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312)744-6975/9028
tara.kennedy@cityofchicago.org