IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILMER CATALAN-RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-3258 |
| v. | ) | |
| | ) | |
| RICARDO WONG, Field Office Director, | ) | The Hon. Joan H. Lefkow |
| Chicago, U.S. Immigration and Customs | ) | Magistrate Judge Jeffrey Cole |
| Enforcement ("ICE"), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO SEVER AND TRANSFER
MISJOINED CLAIMS/PARTIES TO WESTERN DIVISION**

Defendant Correct Care Solutions has moved to sever and transfer Counts III and V of Plaintiff Wilmer Catalan-Ramirez's Second Amended Complaint, contending that these claims are unrelated to the claims against the ICE and CPD Defendants. Doc. No. 76. Defendant's motion should be denied.

**INTRODUCTION**

On January 15, 2017, Plaintiff was the victim of a drive-by shooting where he sustained multiple injuries including a traumatic brain injury that resulted in partial paralysis on his left side. His serious injuries all require medical attention and rehabilitative services. Approximately two-and-a-half months after sustaining these injuries, U.S. Immigration and Customs Enforcement ("ICE") conducted an illegal raid inside Plaintiff's house based on false information provided by the Chicago Police Department ("CPD") that incorrectly labeled him as a gang member. During this illegal raid, several ICE agents used excessive force against

1

Plaintiff and slammed him to the ground, injuring his left shoulder and further exacerbating his preexisting injuries.

After the raid, ICE took Plaintiff to McHenry County Adult Correctional Facility ("McHenry County Jail"), where he is currently detained. Correct Care Solutions ("CCS"), pursuant to a contract with McHenry County, provides medical and mental health evaluation, care, and treatment to detainees at McHenry County Jail. While at McHenry County Jail, Plaintiff has been denied necessary medical care for the injuries he sustained during the January 2017 shooting and the additional injuries sustained as a result of the ICE agents' actions. As a result, Plaintiff is experiencing a number of medical issues including but not limited to extreme pain in his left shoulder and arm and he is losing range of motion on the left side of his body.

In his Second Amended Complaint, Plaintiff alleges claims against the CPD Defendants related to his inclusion in the gang database without any due process (Counts VII, VIII, IX, X, and XI). Plaintiff alleges claims against the ICE Defendants related to their illegal raid and their use of excessive force during their arrest of Plaintiff (Counts I and II). Plaintiff alleges claims against the McHenry County Defendants related to Plaintiff's accommodations in the Jail, treatment by security staff, and transportation (Counts IV, V, and VI).[1] Against CCS, Plaintiff alleges a claim for their failure to provide Plaintiff adequate medical care in the Jail (Count III), and a claim for retaliation (Count V). The claims against CCS arise from and are related to ICE's illegal raid and subsequent detention of Plaintiff based on false information from CPD's gang database.

---

[1] The McHenry County Defendants have been dismissed from the lawsuit after reaching a settlement agreement with Plaintiff. *See* Doc. No. 99.

**ARGUMENT**

Federal Rule of Civil Procedure 20 allows defendants to be joined in one action if: (1) the plaintiff asserts any right to relief against the defendants jointly, severally, or in the alternative "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). If a plaintiff fails to satisfy the requirements of permissive joinder, the Court may add or drop a party or sever any claim against a party pursuant to Federal Rule of Civil Procedure 21. Fed. R Civ. P. 21.

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Federal policy favors joinder because the purpose of Rule 20 is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Malibu Media, L.L.C v. John Does 1-6*, 291 F.R.D. 191, 199 (N.D. Ill. 2013) (citation omitted). Thus, "[c]ourts have a strong interest in joining counts for reasons of efficiency and judicial economy." *United States v. Kashmiri*, No. 09 CR 830-4, 2011 WL 248512, at *1 (N.D. Ill. Jan. 25, 2011); *see also First Time Videos, L.L.C. v. Does 1-500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011) ("requirements of joinder are 'liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action.'" (citation omitted)).

**I.  Plaintiff's Claims Arise Out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences**

Defendant argues that the claims against CCS are misjoined because they do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Doc. No. 25. ¶ 7. Defendant's argument must be rejected.

"Although 'transaction or occurrence' is not defined in Rule 20(a), courts interpret this term as 'comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Lozada v. City of Chicago*, No. 10 C 1019, 2010 WL 3487952, at *2 (N.D. Ill. Aug. 30, 2010) (quoting *Mosley v. Gen. Motors. Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). "The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *Malibu Media*, 291 F.R.D. at 201 (quoting *In re EMC Corp*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)). A court "may be inclined to find that the claims before it arose out of the same transaction when separate trials would result in delay, inconvenience and expense to the parties and the court because of the likelihood of overlapping proof and duplication in testimony." *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 722 (N.D. Ill. 2016) (quotation marks and citation omitted); *see also Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 744 (N.D. Ill. 2007).

Plaintiff's claims all arise out of the same series of occurrences. Plaintiff is in ICE custody at the McHenry County Jail because ICE targeted Plaintiff after CPD provided false information regarding Plaintiff's status as a gang member. In the process of raiding his home and arresting him, the ICE agents injured Plaintiff's left shoulder and further exacerbated his preexisting injuries. CCS is responsible for providing Plaintiff with adequate medical care for all his injuries while he is detained at the Jail, and Plaintiff claims that CCS has failed in that responsibility.

Thus, Plaintiff's claims satisfy the logical relationship test as there is substantial evidentiary overlap in the facts giving rise to the claims against all the Defendants. Plaintiff's damages related to his claims against the CPD Defendants and the ICE Defendants will be

4

informed by Plaintiff's experience and suffering in the Jail—and how CCS has contributed to Plaintiff's suffering by failing to provide him with adequate medical care is relevant to that inquiry. For all his damages and injunctive claims, Plaintiff will need to take the depositions of, *inter alia*, the ICE agents, all relevant CCS employees at the Jail, all relevant security staff at the Jail, detainee witnesses, all the medical professionals CCS has referred Plaintiff to since Plaintiff initiated the lawsuit, Plaintiff's treating physicians prior to his detention at the Jail, and any Rule 26 experts. If Plaintiff's claims against CCS were severed from his claims against the other Defendants, separate trials would certainly result in duplicate testimony and added expense to the parties and to the Court. *See, e.g.*, *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 73-74 (7th Cir. 1990) (finding joinder permissible where one defendant caused an injury and the second defendant later aggravated that injury despite the accidents occurring four and a half months apart at businesses owned by different defendants); *Ruiz v. Williams*, 144 F. Supp. 3d 1007, 1017 (N.D. Ill. 2015) (finder joinder proper where plaintiff sued medical and non-medical professionals from three different prisons because the claims against the defendants arose from the same series of occurrences); *Romero v. Atchison*, No. 15-cv-713, 2015 WL 7710372, at *4 (N.D. Ill. Nov. 30, 2015) (finding no reason to sever plaintiff's claims against defendants from three different prisons because the claims arose out of the same series of transactions); *Papachristos v. Hilton Mgmt., L.L.C.*, No. 14 CV 5501, 2015 WL 1094852, at *4 (N.D. Ill. Mar. 10, 2015) (finding defendants properly joined because the claims are part of a series of occurrences where plaintiff injured in a rear-end collision alleged to have re-aggravated and re-injured previous head and neck injuries from a slip-and-fall at a hotel two years earlier); *Wilson v. Peslak*, No. 04 C 2345, 2005 WL 1227316, at *2 (N.D. Ill. May 12, 2005) (finding that plaintiffs' claims arise out of the same series of transactions because the only reason the first plaintiff ever came in contact with

the defendant police officers is because he reacted to the second plaintiff's pretextual detention); *Bielfeldt v. Graves*, No. 1:15-cv-01419-JEH, 2017 WL 252282, at *2 (C.D. Ill. Jan. 19, 2017) (denying defendants' motion to sever because there "will most certainly be overlap in the discovery that is conducted, particularly in regard to the witnesses to be deposed and the information to be gathered"); *Bell v. Werner Enters., Inc.*, No. 5:11CV18, 2011 WL 1297115, at *3 (N.D. W.Va. Apr. 5, 2011) (finding that "the injuries the plaintiff received from the two accidents are inextricably intertwined and accordingly arise from the same series of transactions or occurrences").

## II.     Questions of Fact Common to all Defendants Will Arise in the Action

Defendants argue that there is no factual or legal nexus between the claims. Doc. No. 25. ¶ 7. This argument also fails. Common questions of fact will certainly arise in this action. The extent of Plaintiff's pre-existing injuries that he sustained from the gun shots wounds as well as the extent of his injuries caused by the ICE agents and the extent of his injuries caused by the delay in treatment at the Jail will be factual inquires relevant to all claims. Plaintiff's medical records from his treating physicians prior to his detention in Chicago and his medical records since he has been detained are relevant to all claims. As explained above, to establish Plaintiff's injuries, Plaintiff will need to take the depositions of the ICE agents, numerous security staff and CCS employees at the Jail, various medical professionals located in both the Eastern and Western Divisions, and experts. Further, there will be factual inquiries into the relationship between ICE, McHenry County Jail, and CCS, particularly regarding ICE's oversight and approval process for any medical treatment provided to Plaintiff. The common questions of fact that will arise in this action make joinder of all Defendants and claims appropriate. *See, e.g.*, *Schulke v. Orthopaedics*, No. 16 C 2563, 2016 WL 3059114, at *2 (N.D. Ill. May 31, 2016)

(finding joinder of defendants proper because "[t]he extent of Schulke's injuries and what caused those injuries are questions of fact common to each of the separately alleged claims for relief"); *Cobbier Nev., L.L.C. v. Does 1-28*, No. 15 C 7538, 2016 WL 193408, at *3 (N.D. Ill. Jan. 15, 2016) (denying defendants' motion to sever even though it was likely defendants would raise individual defenses that differ vastly because Rule 20 does not require that *every* question of law or fact be common); *Ruiz*, 144 F. Supp. 3d at 1017 (N.D. Ill. 2015) (finder joinder proper where plaintiff sued medical and non-medical professionals from three different prisons because many of the same medical records, grievances, and witnesses will be involved in Plaintiff's claims against all defendants such that severing the case would result in the same or similar trials in three courts); *Young v. Obaisi*, No. 15-cv-2412, 2015 WL 8013437, at *5 (N.D. Ill. Dec. 7, 2015) (denying motion to sever because "[w]hile certain evidence will only be relevant to claims against one defendant doctor or the other, a host of common questions of law and fact pertain equally to both claims" and key witness would have to testify twice if claims were severed).

### III. Joinder Will Not Result in Prejudice to CCS

Defendant argues that Plaintiff's claims against the ICE and CPD Defendants are "hot topics in the news and extremely controversial in this political climate" and therefore CCS "would be severely prejudiced if the unrelated claims are tried together." Doc. No. 25 ¶ 8. CCS further argues that it will be forced to participate in extensive discovery on issues unrelated to Plaintiff's medical treatment at the Jail. *Id.* Defendant's arguments do not hold water.

At this stage in the litigation, joinder results in no unfairness to CCS. As explained above, the underlying facts related to Plaintiff's injuries are intertwined and relevant to the claims against all Defendants. Severance of the claims against CCS from the claims against ICE and the CPD Defendants would be "inefficient as it would force the Court to conduct multiple

litigations on the same factual and legal issues," which "would require more of the Court's time, money, and effort." *Malibu Media*, 291 F.R.D. at 205 (finding that joinder would result in no unfairness to the parties). Further, CCS's argument that it will be prejudiced if it has to try the case together with the ICE and CPD Defendants due to the political climate is greatly overstated. If this case precedes to a jury trial, any concern for jury confusion can be alleviated through jury instructions. *See Bielfeldt*, 2017 WL 252282, at *2 (refusing to sever claims at early stages of litigation where severance "would lead to judicial inefficiency and potentially cause additional expense to the parties" despite the "potential for jury confusion or prejudice to the parties" because "[a]fter discovery has concluded and all dispositive motions are filed, there could also be a relatively simple remedy to any potential confusion or prejudice"); *Young*, 2015 WL 8013437, at *5 (finding that joinder of two defendant doctors would not prejudice the defendants at a jury trial because "[s]imply testifying that neither has any control over the other's operations would ameliorate any prejudice occasioned by a joint trial" and "[a]n instruction to the jury could also be fashioned"). At this point interests of judicial economy outweigh and concern for prejudice to CCS. *See Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *7 (N.D. Ill. Sept. 10, 2008) (finding severance inappropriate where "the interests of economy and convenience appear to outweigh the concern of prejudice to Defendant in that holding four separate trials would require four juries to hear many of the same facts from essentially the same witnesses.").

      Accordingly, Plaintiff's claims against CCS should not be severed from his claims against the CPD and ICE Defendants.

### IV. Claims Against CCS Should Not be Transferred to the Western Division

Defendant argues that the claims against CCS should not only be severed, but also transferred to the Western Division. Doc. No. 25 ¶¶ 9-18. Defendant's argument fails not only for the reasons stated above, but also because transfer of the claims to the Western Division is inappropriate.

Pursuant to 28 U.S.C § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action" to another division. The movant bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986); *see also Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 809 (N.D. Ill. 2007). To determine the convenience of one forum over another, courts consider the following factors: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; and (4) the convenience of the witnesses." *Graham*, 519 F. Supp. 2d at 809.

The balance of factors weighs heavily in favor of keeping the claims in the Eastern Division. As to the first factor, it is well established that the plaintiff's choice of forum is generally given substantial weight, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice off forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also Graham*, 519 F. Supp. 2d at 809. Plaintiff's choice of forum is the Eastern Division—he lived in Chicago for a number of years before being detained by ICE and his family is still in Chicago.

As to the second factor, there are material events relevant to Plaintiff's claims against CCS that occurred not only in the Western Division, but also in the Eastern Division. For

9

example, the drive by shooting that resulted in Plaintiff's serious injuries as well as ICE's arrest of Plaintiff that resulted in further injuries took place in Chicago. Additionally, Plaintiff saw a number of doctors in Chicago during his recovery from the shooting, an emergency room doctor at Loyola Hospital after ICE arrested him, and at least one specialist (a neurosurgeon) in Chicago since being in ICE custody. Further, the fact that some material events related to Plaintiff's claims against CCS have occurred in the Western Division is far from dispositive. *See, e.g.*, *Graham*, 519 F. Supp. 2d at 809-10 (finding that defendant did not meet its burden to transfer case from the Eastern Division to the Western Division even though material events took place in the Western Division); *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 961-63 (N.D. Ill. 2006) (finding that the factors weighed in favor of retaining the case in the Northern District of Illinois even though material events giving rise to the claim did not occur in Illinois).

As to the third factor, Plaintiff maintains that the Eastern Division is more convenient while Defendant CCS maintains that the Western Division is more convenient. However, "[t]ransfer is not appropriate where it would merely shift inconvenience from one party to another." *Graham*, 519 F. Supp. 2d at 810. Thus, this factor does not weight in favor of transfer.

As to the fourth factor, despite CCS's contentions to the contrary, there are a number of witnesses relevant to the claims against CCS that are located in the Eastern Division. The physicians and physical therapists that treated Plaintiff for his serious injuries before he was detained by ICE are all located in Chicago. Family members who can testify as to Plaintiff's injuries and physical limitations that resulted from the shooting are located in Chicago. The ICE agents who arrested Plaintiff and further injured him are located in Chicago. The emergency physicians who saw Plaintiff immediately after his arrest are in Chicago. The ICE officials who can testify to ICE's role in approving Plaintiff's treatment recommended by CCS are in Chicago.

At least one specialist (the neurosurgeon) that Plaintiff has been referred to since being detained is located in Chicago. And any experts that Plaintiff may disclose to testify in support of his claims against CCS will be located in Chicago. Therefore, CCS has not met its burden of establishing that the Western Division is "clearly more convenient" than the Eastern Division.

In addition to considering convenience, the Court must also consider the interest of justice. *Graham*, 519 F. Supp. 2d at 810. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," such as the likelihood of a speedy trial, the possibility of consolidation, and the court's familiarity with particular law. *Coffey*, 796 F.2d at 221; *see also Graham*, 519 F. Supp. 2d at 810. For the reasons explained above, keeping all of Plaintiffs claims together in the Eastern Division would make for a more efficient administration of justice. Other factors courts consider in this analysis include "the relation of the communities to the issue of the litigation and the desirability of resolving controversies in their locale." *Energaire Corp. v. E.S. Originals, Inc.*, No. 99 C 3252, 1999 WL 1018039, at *4-5 (N.D. Ill. Nov. 2, 1999). Defendant argues that the Western Division has an interest in hearing cases concerning jails located within its borders. However, while this may be true, there are greater community interests that weigh in favor of keeping the claims in the Eastern Division. Plaintiff is a long time resident of Chicago and his family is in Chicago. The event that led to him being detained in the Western Division—ICE's raid and arrest—occurred in Chicago. Additionally, community members who have been supporting Plaintiff and his family throughout this entire litigation have an interest in seeing the case resolved in the Eastern Division. Therefore, the interest of justice weighs in favor of keeping the claims in the Eastern Division.

Accordingly, Defendant has failed to meet its burden of showing that the claims against CCS should be transferred to the Western Division.[2]

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant CCS's renewed motion to sever and transfer Counts III and IV to the Western Division.

Respectfully submitted,

**WILMER CATALAN-RAMIREZ**

By: /s/ Vanessa del Valle
   One of his attorneys

Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
sheila.bedi@law.northwestern.edu
vanessa.delvalle@law.northwestern.edu

"Julie" Yihong Mao
Sejal Zota
National Immigration Project of the National Lawyers Guild
14 Beacon Street, Suite 602
Boston, MA 02108
julie@nipnlg.org
sejal@nipnlg.org
(617) 227-9727

---

[2] The relief Defendant seeks in this motion is for "this Court [to] enter an order which severs the misjoined medical claims and either transfers the medical claims to the Western Division or enters a Case Management Order so that the parties may proceed with discovery." Doc. No. 75. However, Defendant includes a paragraph in its Renewed Motion to Sever and Transfer Misjoined Claims/Parties to Western Division where it argues that Plaintiff's claims against CCS should be dismissed because they are moot. *See id.* ¶ 3. It is Plaintiff's understanding based on the relief sought in the Defendant's motion and the docket that he only needs to respond to CCS's arguments regarding severance and transfer. Therefore, Plaintiff did not address CCS's brief argument regarding mootness. If the Court wishes for Plaintiff to fully brief that issue, Plaintiff is prepared to do so.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she served the foregoing document upon all persons who have filed appearances in this case via the Court's CM/ECF system on September 20, 2017.

/s/ Vanessa del Valle